[No. A029541. First Dist., Div. Four. May 29, 1986.]

JOSE FRANCISCO ALCALA, Plaintiff and Respondent, v. WESTERN AG ENTERPRISES, Defendant and Appellant.

**COUNSEL**

Robert K. Schiebelhut, D. Jan Duffy and Sinsheimer, Schiebelhut & Baggett for Defendant and Appellant.

John William Cumming for Plaintiff and Respondent.

## OPINION

CHANNELL, J.—Employer Western Ag Enterprises appeals from a judgment granting employee Jose Francisco Alcala an award of overtime wages, plus costs.

Until November 1983, Alcala was employed as a milker at a dairy ranch owned by Western Ag in Del Norte County. In December 1983, Alcala filed a complaint for overtime with the state Labor Commissioner. After a hearing, the labor commissioner issued its decision awarding Alcala $8,394.65 in overtime pay for the period January 1982–November 1983. Each side appealed, and a trial de novo was held in superior court on July 19, 1984. Alcala was again awarded $8,394.65, plus costs. A timely notice of appeal was filed.

At issue is whether Western Ag complied with the overtime requirements of wage order 14-80. (Cal. Admin. Code, tit. 8, § 11140, subd. 3(A).)[1] The trial court held that it did not, finding that Alcala had worked 1,163.5 overtime hours for which no compensation was paid. The trial court's award was proper. We affirm the judgment.

## I. FACTS

During the time period at issue (Jan. 1982–Nov. 1983), Alcala was employed as a milker by Western Ag pursuant to an oral agreement and was paid $1,350 per month. Because the length of work shifts fluctuated from week to week, an industry practice of paying on a salary basis had developed so employees could count on a regular, stable income. With a few exceptions not here pertinent, Alcala's pay did not change whether his work hours went up or down.

---

[1]Subdivision 3(A) (hereafter wage order 14-80), relating to the hours and days of work of persons employed in agricultural occupations, provides in pertinent part: "The following overtime provisions are applicable to employees eighteen (18) years of age or over and to employees sixteen (16) or seventeen (17) years of age who are not required by law to attend school: *such employees shall not be employed more than ten (10) hours in any one workday or more than six (6) days in any workweek unless the employee receives one and one-half (14) times such employee's regular rate of pay for all hours worked over ten (10) hours in any workday* and for the first eight (8) hours on the seventh (7th) day of work . . . in the workweek." (Italics added.)

Wage order 14-80 was promulgated by the Industrial Welfare Commission (IWC) pursuant to its authority under Labor Code sections 1173 and 1182.

According to company records calculated on a *weekly* basis, Alcala worked a total of 5,580 hours during 93 weeks in 1982 and 1983, or an *average* of 60 hours per week (the standard workweek prescribed by wage order 14-80). During that period, the total number of hours falling both below and above the 60-hour per week standard was 388.5. But these records also indicated that Alcala worked many *days* in excess of the standard 10-hour workday prescribed in wage order 14-80, sometimes as many as 19 hours a day. Yet, according to testimony and Alcala's pay stubs, *no* overtime pay was ever paid. The trial court found that from January 3, 1982 to November 14, 1983, Alcala worked 1,163.5 overtime hours for which no additional compensation had been paid.

The operations manager for Western Ag explained that Alcala's salary was scaled to the average workweek. According to the employer's understanding of the minimum wage law, it was necessary only to pay at least minimum wage, plus time and a half for any hours in excess of 10 hours per day or 60 hours per week. In the case of milkers drawing a monthly salary, the operations manager testified that by taking the hours of normal work and multiplying by the applicable straight time and overtime rates, these minimum wage rates were exceeded.

The trial court found that "[i]n the absence of a mutual and specific agreement to the contrary, the hourly wage rate must be held to be the total number of regular hours divided by the monthly compensation." This regular rate was then to be multiplied by one and one-half to determine the overtime rate. Finding no agreement to the contrary and there being no showing of any wage rate other than a monthly salary for regular hours worked, the court computed Alcala's hourly overtime rate as $7.215 which, when applied to the 1,163.5 overtime hours for which no compensation was paid, justified an award of $8,394.65 in overtime pay.

## II. Discussion

### A. *Entitlement to Overtime*

 Western Ag contends that it has complied with the overtime requirements of wage order 14-80 because Alcala's salary was geared to an average 60-hour workweek and was set at a level sufficient to guarantee at least minimum wage for all regular hours and time and a half for overtime. We agree with Alcala, however, that he is entitled to compensation for his overtime hours.

There is no dispute that Alcala's employment was governed by the wage and hour requirements of wage order 14-80. A constitutional challenge to

the validity of wage order 14-80 was unanimously rejected by our Supreme Court in *Industrial Welfare Com.* v. *Superior Court* (1980) 27 Cal.3d 690, 731-733 [166 Cal.Rptr. 331, 613 P.2d 579]. During the course of its opinion, the court stated: "Indeed, although the agricultural employers complain about the harshness of the wage orders applicable to their industry, the fact of the matter is that the wage order relating to agriculture appears to be particularly solicitous of the interests of agricultural employers in several respects. Thus, for example, wage order 14-80 provides for a longer work-week for agricultural employees (ten-hour day, six-day week) before the overtime premium applies, . . ." (*Id.,* at p. 732.)

In support of the trial court's order, Alcala argues that the rationale relied upon by Western Ag for construing wage order 14-80 has been rejected repeatedly in cases arising under the Fair Labor Standards Act. (29 U.S.C. § 201 et seq.) Western Ag, on the other hand, has argued that reliance on federal cases is "misplaced and misleading." But California's wage orders are closely modeled after (although they do not duplicate), section 7(a)(1) of the Fair Labor Standards Act of 1938. (29 U.S.C. § 207(a)(1).)[2] ■ It has been held that when California's laws are patterned on federal statutes, federal cases construing those federal statutes may be looked to for persuasive guidance. (See, e.g., *Building Material & Construction Teamsters' Union, Local 216* v. *Farrell* (1986) 41 Cal.3d 651, 658 [224 Cal.Rptr. 688, 715 P.2d 648]; *Nishikawa Farms, Inc.* v. *Mahoney* (1977) 66 Cal.App.3d 781, 787 [136 Cal.Rptr. 233] [construing ALRB, based on NLRB].)

■ In *Brennan* v. *Elmer's Disposal Service, Inc.* (9th Cir. 1975) 510 F.2d 84, the Ninth Circuit held that, absent an explicit agreement, the employer's fixed salary plan violated the overtime requirements of section 7(a) of the Fair Labor Standards Act. That court stated: "It is settled law that wage plans under which an employer pays a fixed weekly salary for irregular workweeks violate this statute when the number of hours actually worked are in excess of the statutory overtime requirements. [Citations.] This is true even where the employer can show the fixed salary is the sum of a designated hourly rate for forty hours, plus one and one-half the designated rate for hours worked over forty. [Citation.] The [United States] Supreme Court long ago rejected employer assertions that the 'regular rate' for any week under such wage plans is anything but the fixed salary divided

---

[2]That section provides, in pertinent part: "[N]o employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

by the number of hours actually worked that week. [Citation.]" (*Id.,* at p. 86.)

Applying those principles, the trial court properly concluded that, absent an explicit agreement, Alcala's monthly salary did not serve to compensate him for the overtime hours worked in excess of the hours set forth in wage order 14-80.

B. *Method of Calculating Overtime Pay*

■ As a fallback argument, Western Ag contends that if any overtime pay is due, Alcala is entitled to an amount equal to one-half of the straight time rate, rather than one and one-half of the straight time rate. Alcala responds that Western Ag is liable for the entire amount found due by the trial court.

In contrast to its first argument, Western Ag asks this court to look to federal guidelines used in implementing the Fair Labor Standards Act. (See 29 C.F.R. § 778.114.) This argument was raised and rejected, however, in *Skyline Homes, Inc.* v. *Department of Industrial Relations* (1985) 165 Cal.App.3d 239 [211 Cal.Rptr. 792]. In that case, the court noted that unlike the federal act which focuses on hours worked during the "work-week," California's wage orders govern compensation for overtime during both the "workweek" and the "workday." (*Id.,* at pp. 247-248.) And in the context of an employee working a "fluctuating workweek," the court held that using an overtime rate of one and one-half rather than one-half of the regular rate was more compatible with the intent of the Industrial Welfare Commission's wage order. (*Id.,* at pp. 248-249; see also *id.,* at p. 245.)

Moreover, we note that the trial court's rulings and its calculation of overtime wages due were in accord with those reached at an earlier stage of the proceedings by the Division of Labor Standards Enforcement and the Labor Commissioner. The division is specifically empowered to administer and enforce IWC orders (Lab. Code, §§ 61, 1193.5) and is the agency charged with interpreting the intent of the IWC. Its interpretation is entitled to great weight and under established principles of statutory construction, unless it is clearly unreasonable, it will be upheld. (*Skyline Homes, Inc.* v. *Department of Industrial Relations, supra,* 165 Cal.App.3d at p. 249.) As we do not find the interpretations of wage order 14-80 below to be unreasonable, we uphold the award of overtime wages in this case.

The judgment is affirmed.

Anderson, P. J., and Sabraw, J., concurred.