[No. B023824. Second Dist., Div. Seven. Dec. 31, 1987.]

KEYES MOTORS, INC., Plaintiff and Respondent, v.
DIVISION OF LABOR STANDARDS ENFORCEMENT, Defendant
and Appellant.

## COUNSEL

H. Thomas Cadell, Jr., for Defendant and Appellant.

Gilbert, Kelly, Crowley & Jennett, James G. Lewis and David G. Marcus for Plaintiff and Respondent.

## OPINION

**JOHNSON, J.**—Keyes Motors sells and services automobiles. The Division of Labor Standards Enforcement of the Department of Industrial Relations (DLSE) administers and enforces Industrial Welfare Commission (IWC) orders. IWC Order 7-80 regulates wages in the mercantile industry. It exempts "commission" employees from the overtime compensation requirements of state labor laws. In 1982 DLSE determined Keyes's mechan-

ics were not "commission" employees and ordered Keyes to pay those mechanics $6,000 in overtime wages pursuant to IWC Order 7-80. Keyes successfully sought declaratory relief to the effect its mechanics are commission employees. We conclude DLSE's interpretation was reasonable, and should have been accorded great weight by the trial court. Accordingly, we reverse.

## FACTS AND PROCEEDINGS BELOW

Upon auditing Keyes's books for the period January 1, 1981, through June 30, 1982, DLSE determined Keyes owed its mechanics $6,000 in overtime wages. DLSE compelled payment of the unpaid overtime and ordered Keyes to abide by the overtime provisions of IWC Order 7-80 in the future.

Keyes instituted proceedings against DLSE seeking a judicial declaration that the mechanics' "flat rate" method of compensation, based on a percentage of the hourly rate charged the customer, constituted commission wages, thereby exempting Keyes's mechanics from overtime. In addition, Keyes requested a permanent injunction preventing DLSE from enforcing IWC Order 7-80 against Keyes in the future.

IWC Order 7-80 regulates wages, hours and working conditions in the mercantile industry. It exempts commission employees from its overtime provisions without defining commission. Keyes persuaded the trial court its mechanics are paid on a commission basis. Typically, the service writer takes the customer's order and conveys it to the mechanic, who completes the repair and examines the automobile for further problems. If the mechanic finds the problems are more extensive than originally thought, or other necessary repairs become apparent, the mechanic advises the service writer of the additional work needed. When the service writer obtains the customer's authorization, the mechanic may proceed. The mechanic usually has no contact with the customer.

The manufacturer's "flat rate manual" lists the fixed number of hours to bill the customer per repair; the actual time spent is irrelevant to the charge.[1] The customer charge is Keyes's hourly rate multiplied by the number of hours specified in the flat rate manual for that task, plus parts. The

---

[1] Flat rate manuals specify the amount of time allotted for each repair. They are published by automobile manufacturers and independent authoritative sources recognized industry-wide. All automobile service facilities use them.

mechanic earns a fixed percentage of the hourly rate charged the customer. According to Keyes, this method of compensation provides mechanics the incentive to increase their earnings by performing additional repairs, rewarding diligence and hard work with higher pay.

DLSE maintains the IWC never intended to exempt mechanics from overtime compensation. DLSE cited the order's statement of purpose to show "commission" applied only to sales of "big ticket" items, a term borrowed from the federal Fair Labor Standards Act to describe expensive merchandise like furniture and stereos.

The trial court granted declaratory and injunctive relief for Keyes. Defining commission as "a percentage of the money received in [the] transaction" [citation omitted], the trial court found Keyes's mechanics earn commission, as does a car wash employee who receives 50 cents per car or a 9 percent commission on each sale. It found Keyes's mechanics engaged "in the sale of goods and services through the services [sic] managers and services [sic] writers," satisfying the Labor Code's definition of commission, because the mechanics' recommendations "causes [sic] the customer to authorize further sales." DLSE appeals.

## DISCUSSION

Labor Code section 1173 authorizes the IWC to promulgate orders regulating wages, hours and working conditions throughout the state. IWC Order 7-80 states in pertinent part: "3. Hours and Days of Work [¶](A) No employee eighteen (18) years of age or over nor any minor permitted to work as an adult . . . shall be employed more than eight (8) hours in any workday or more than forty (40) hours in any workweek unless the employee receives one and one-half (1½) times such employee's regular rate of pay for all hours worked over forty (40) hours in the workweek. [¶](C) Provisions of subsections (A) and (B) above shall not apply to any employee whose earnings exceed one and one-half (1½) times the minimum wage, if more than half (½) of that employee's compensation represents commissions." Under the order, employees earn time and one-half for each hour worked in excess of eight hours per day, with one exception: pursuant to subdivision (C), the overtime provisions do not apply when more than one half the employee's compensation represents commissions.

DLSE is the body charged with administration and enforcement of IWC orders (Lab. Code, §§ 61, 1193.5). As interpretation necessarily pre-

cedes administration (*Alcala* v. *Western Ag Enterprises* (1986) 182 Cal.App.3d 546, 551 [227 Cal.Rptr. 453]), DLSE's primary responsibility is to interpret the intent of the IWC. (*Skyline Homes, Inc.* v. *Department of Industrial Relations* (1985) 165 Cal.App.3d 239, 249 [211 Cal.Rptr. 792].)

Order 7-80 regulates all employees in the mercantile industry.[2] ■ DLSE has consistently read subdivision (C) to exempt from overtime only employees in sales positions. DLSE has never interpreted IWC order 7-80(C) to exempt mechanics simply because they are employed by a merchant. In DLSE's view, this interpretation is consistent with the IWC's purpose in imposing penalty pay for overtime, namely, to foster the health and welfare of employees.

DLSE cites Labor Code section 204.1 defining commission in support of its position: ". . . Commission wages are compensation paid to any person *for services rendered in the sale* of such employer's property or services and based proportionately upon the amount or value thereof." [DLSE's italics.] DLSE interprets the emphasized language as conclusive that commissions are earned only by those participating in direct sales to the customer. The mechanic has no direct contact with the customer. He merely informs the service writer of additional necessary repairs.

Keyes, on the other hand, emphasizes the language in Labor Code section 204.1 that "commission wages are compensation paid to any person for services rendered in the sale of such employer's property or services and *based proportionately upon the amount or value thereof.*" (Italics added.) Keyes argues this demonstrates the California Legislature intended the sale of services to be a proper basis upon which to determine commission wages. Keyes also cites the definition of commission found in Webster's Third New International Dictionary (1961), page 457, a "percentage of the money received in a transaction," as evidence its mechanics earn commission be-

---

[2] IWC Order No. 9-80, regulating wages, hours and working conditions in the *transportation* industry, which applies to mechanics working in auto repair shops not connected to auto dealerships does not contain an overtime exemption for employees earning commission. However, IWC Order 7-80 applies to "all persons employed in the mercantile industry," and defines "mercantile" as ". . . any business. . . . . .operated for the purpose of . . . selling . . . goods." The parties stipulated only Order 7-80 applies in this case.

DLSE argues it is a denial of equal protection of the laws to deny mechanics in the mercantile industry (i.e., dealerships) the overtime compensation awarded their fellow mechanics in the transportation industry (i.e., auto repair shops) for the same work. There may be some merit to this proposition. However, because we find DLSE's interpretation of Order 7-80 sound, we need not address this argument.

cause they receive a percentage of the hourly rate charged the customer per repair. Missing from this analysis is an explanation of how Keyes's mechanics engage in "sales" or "transactions" by repairing automobiles.

■ "Final responsibility for the interpretation of a statute rests with the courts. [Citations omitted.]" (*City of Anaheim* v. *Workers' Comp. Appeals Bd.* (1981) 124 Cal.App.3d 609, 613 [177 Cal.Rptr. 441].) Under established principles of statutory construction, the goal of the courts is to ascertain legislative intent to give effect to the purpose of the law. (*Poppers* v. *Tamalpais Union High School Dist.* (1986) 184 Cal.App.3d 399, 403 [229 Cal.Rptr. 77].) Words should be given their ordinary meaning to achieve this objective. (*Merrifield* v. *Edmonds* (1983) 146 Cal.App.3d 336, 344 [194 Cal.Rptr. 104].) ■ We conclude Labor Code section 204.1 sets up two requirements, both of which must be met before a compensation scheme is deemed to constitute "commission wages." First, the employees must be involved principally in *selling* a product or service, not making the product or rendering the service. Second, the amount of their compensation must be a percent of the price of the product or service. ■ Mechanics are engaged in rendering a service, not selling it. Thus Keyes's mechanics fail the first part of the test, even assuming they may satisfy the second.[3]

Keyes portrays its mechanics as an integral part of the sales force because their special knowledge, allowing them to diagnose needed repairs, makes

[3] DLSE claims the statement accompanying IWC Order 7-80 further supports the contention the IWC intended the commission exemption to apply only to employees in sales positions. Labor Code section 1177 requires each order of the IWC be accompanied by a "statement as to the basis upon which the order is predicated. . . ." The "Statement as to the Basis Upon Which Industrial Welfare Commission Order No. 7-80 Regulating Wages, Hours, and Working Conditions in the Mercantile Industry, is Predicated" explains, " '[s]ubsection (C) was included in this order in 1978 in recognition of special working conditions of "big ticket" commissioned employees.' "

The term "big ticket" helps to explain the types of employment covered by the commission exemption from overtime under the Fair Labor Standards Act. (FLSA). (29 C.F.R. § 779.414.) 29 Code of Federal Regulations section 779.414 reads: "Section 7(i) [exempting commission employees from overtime compensation under the FLSA] was enacted to relieve an employer from the obligation of paying overtime compensation to certain employees of a retail or service establishment paid wholly or in greater part on the basis of commissions. These employees are generally employed in so-called 'big ticket'departments and those establishments or parts of establishments where commission methods of payment traditionally have been used, typically those dealing in furniture, bedding and home furnishings, floor covering, draperies, major appliances, musical instruments, radios and television, men's clothing, women's ready to wear, shoes, corsets, home insulation, and various home custom orders . . . ." (Italics in original.)

While it is true California's wage orders resemble the FLSA *(Alcala, supra,* 182 Cal.App.3d at p. 550), we find the meaning of the term "big ticket" ambiguous in this provision. As federal law is not controlling here, we decline to apply it in this case.

them essential to the sale of both parts and service. It may be true that parts and labor are ultimately sold because mechanics diagnose the need for additional repairs. However, this diagnosis and recommendation is no more "salesmanship" than a plumber's diagnosis and recommendation that an additional pipe is needed to make a repair. Put simply, a mechanic performs labor, not sales.

■ Statutes must be construed in a reasonable and commonsense manner. (*Bosley Medical Group* v. *Abramson* (1984) 161 Cal.App.3d 284, 290 [207 Cal.Rptr. 477].) Common sense militates against conceiving of auto mechanics as "commission salesmen" any more than plumbers or electricians simply because their employers sell automobiles. ■ Furthermore, we note "[t]he DLSE's interpretation is entitled to great weight and under established principles of statutory construction, unless it is clearly unreasonable, it will be upheld [citation omitted]." (*Skyline Homes, supra,* 165 Cal.App.3d at p. 249.) In this case, DLSE's interpretation was reasonable and should be upheld. ■ The purpose of premium pay for overtime hours is to "regulate maximum hours consistent with the health and welfare of employees" covered by the order. (*Industrial Welfare Com.* v. *Superior Court* (1980) 27 Cal.3d 890, 713 [166 Cal.Rptr. 331, 613 P.2d 579].) Mechanics perform hard physical labor; it is crucial for their health and safety and for the quality of the crucial work they are performing that they not be overtired. For these reasons maximum hour regulation is especially important in this area. ■ Accordingly, DLSE's interpretation which would entitle dealers' mechanics to overtime wages appears more compatible with the intent of IWC Order 7-80 and the legislative intent behind California's wage and hour laws.

Finally, Keyes urges it was entitled to judgment on collateral estoppel grounds based on *Division of Labor Standards Enforcement, et al.* v. *Hal Watkins Chevrolet, Inc., et al.,* No. MC 28409, a 1983 Ventura County Municipal Court case deciding the same issue in a suit between DLSE and another automobile dealership. ■ Although in some cases decisions on questions of law may be given collateral estoppel effect, a prior determination of a question of law is not binding on the parties if injustice would result. (7 Witkin, Cal. Procedure (3d ed. 1985) Judgment §§ 274, 275, p. 714; *Pacific Maritime Assn.* v. *California Unemp. Ins. Appeals Board* (1965) 236 Cal.App.2d 325, 333 [45 Cal.Rptr. 892].) Certainly an appellate court cannot be bound by the decision of a municipal court on a question of law reached in another lawsuit merely because one litigant in the suit before the appellate court happened to have been a party in the prior municipal court action.

## DISPOSITION

The judgment is reversed and remanded with directions the trial court enter a judgment in favor of appellant DLSE consistent with this opinion.

Appellant to receive costs on appeal.

Lillie, P. J., and Thompson, J., concurred.