Opinion
CHIN, J.
The general question presented in this case is whether an employer that requires its employees to travel to a work site on its buses must compensate the employees for their time spent traveling on those buses. Specifically, we must decide whether the time agricultural employees spend traveling to and from the fields on employer-provided buses is compensable as “hours worked” under Industrial Welfare Commission wage order No.. 14-80 (Wage Order No. 14-80; found at Cal. Code Regs., tit. 8, § 11140). Wage Order No. 14-80 defines “hours worked” as “the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so.” (Cal. Code Regs., tit. 8, § 11140, subd. 2(G); hereafter, all undesignated subdivision references are to subdivisions of section 11140 of title 8.)
Contrary to the Court of Appeal, we conclude the time agricultural employees are required to spend traveling on their employer’s buses is compensable under Wage Order No. 14-80 because they are “subject to the control of an employer” and do not also have to be “suffered or permitted to work” during this travel period. (Subd. 2(G).) Thus, we reverse the Court of *579 Appeal’s judgment and remand the matter to the Court of Appeal for further proceedings consistent with this opinion.
I. Factual and Procedural Background
This appeal is taken from a judgment of dismissal entered after the trial court sustained defendant’s demurrer without leave to amend. Under well-settled law, therefore, we take as true all properly pleaded material allegations. (Preferred Risk Mutual Ins. Co. v. Reiswig (1999) 21 Cal.4th 208, 212 [87 Cal.Rptr.2d 187, 980 P.2d 895].)
Defendant Royal Packing Company (Royal) is a corporation doing business in Monterey County. Plaintiffs Jose M. Morillion and the class members he represents (collectively, plaintiffs). are present and past agricultural employees of Royal. Royal required plaintiffs to meet for work each day at specified parking lots or assembly areas. After plaintiffs met at these departure points, Royal transported them, in buses that Royal provided and paid for, to the fields where plaintiffs actually worked. At the end of each day, Royal transported plaintiffs back to the departure points on its buses. Royal’s work rules prohibited employees from using their own transportation to get to and from the fields.[1]
In their class action against Royal for, inter alia, California Labor Code violations, unfair business practices, and breach of contract, plaintiffs alleged that they were entitled to compensation (including overtime wages and penalties) for the time they spent traveling to and from the fields. Specifically, plaintiffs claimed Royal should have paid them for the time they spent (1) assembling at the departure points; (2) riding the bus to the fields; (3) waiting for the bus at the end of the day; and (4) riding the bus back to the departure points.[2]
Royal demurred to and moved to strike plaintiffs’ first amended complaint. The trial court sustained Royal’s demurrer without leave to amend, *580 granted its motion to strike, and dismissed plaintiffs’ first amended complaint with prejudice.
Plaintiffs appealed. After concluding that the time plaintiffs spent traveling on Royal’s buses is not compensable under federal authority, the Court of Appeal turned its focus to interpreting Wage Order No. 14-80. Relying on Tidewater Marine Western, Inc. v. Bradshaw (1996) 14 Cal.4th 557, 576 [59 Cal.Rptr.2d 186, 927 P.2d 296] (Tidewater), the Court of Appeal first ruled it could give no weight to the interpretation of “hours worked” contained in the Division of Labor Standards Enforcement’s (DLSE) 1989 Operations and Procedures Manual.[3] The Court of Appeal concluded the DLSE interpretive policy was a regulation and thus void because it was not adopted in accordance with the Administrative Procedure Act (APA; Gov. Code, § 11340 et seq.). However, the Court of Appeal recognized that although the DLSE interpretation of “hours worked” is void, the underlying wage order is not. Thus, the Court of Appeal proceeded to interpret Wage Order No. 14-80 itself.
Although plaintiffs were required to travel on Royal’s buses and thus were arguably “subject to the control of an employer” (subd. 2(G)), the Court of Appeal did not find this determination dispositive. Instead, to determine whether the time plaintiffs spent traveling on Royal’s buses should be considered “hours worked” under Wage Order No. 14-80, the Court of Appeal emphasized the second clause of the “hours worked” definition; “all the time the employee is suffered or permitted to work . . . .” (Subd. 2(G).) This clause, the Court of Appeal concluded, limited whether the time was compensable. In affirming the trial court’s judgment, the Court of Appeal held the time plaintiffs spent traveling was not compensable as “hours worked” under Wage Order No. 14-80 because plaintiffs did not work, as that term is “commonly understood,” during the required transport.
We granted plaintiffs’ petition for review to determine the correct interpretation of “hours worked” under Wage Order No. 14-80, and to determine whether the Court of Appeal correctly applied our decision in Tidewater, supra, 14 Cal.4th 557.
*581 II. Discussion
The Industrial Welfare Commission (IWC) “is the state agency empowered to formulate regulations (known as wage orders) governing employment in the State of California.” (Tidewater, supra, 14 Cal.4th at p. 561, citing Lab. Code, §§ 1173, 1178.5, 1182.) The DLSE “is the state agency empowered to enforce California's labor laws, including IWC wage orders.” (Tidewater, supra, 14 Cal.4th at pp. 561-562, citing Lab. Code, §§21, 61, 95, 98-98.7, 1193.5.)
“IWC has promulgated 15 [industry and occupation wage] orders—12 orders cover specific industries and 3 orders cover occupations—and 1 general minimum wage order which applies to all California employers and employees (excluding public employees and outside salesmen). [Citations.]” (Monzon v. Schaefer Ambulance Service, Inc. (1990) 224 Cal.App.3d 16, 29 [273 Cal.Rptr. 615] (Monzon)) Wage Order No. 14-80 governs all persons “employed in an agricultural occupation,” as defined in the wage order, subject to exceptions not applicable here. (Cal. Code Regs., tit. 8, § 11140, subd. 1; see id., subd. 1(A), (B), (D), (E).) All 15 wage orders contain the same definition of “hours worked” as does Wage Order No. 14-80, except for IWC wage order Nos. 4-89 and 5-89, which include additional language. (Cal. Code Regs., tit. 8, §§ 11040, subd. 2(H), 11050, subd. 2(H).)
A. Wage Order No. 14-80
Both sides argue the import and application of our decision in Tidewater with respect to the interpretation of “hours worked” in the DLSE’s 1989 Operations and Procedures Manual. In Tidewater, we determined that the DLSE interpretative policies contained in its manual were regulations. As regulations, the interpretive policies were void because they were not promulgated in accordance with the APA. (Tidewater, supra, 14 Cal.4th at p. 572.) However, we held that although the interpretative policy at issue was void, the underlying wage order, which is not subject to the APA, was not. (Id. at pp. 569, 577.) “Courts must enforce those wage orders just as they would if the DLSE had never adopted its policy.” (Id. at p. 577.)
Royal contends that the Court of Appeal correctly gave no deference to the DLSE interpretation of “hours worked” because this interpretive policy was a void regulation under Tidewater, supra, 14 Cal.4th at page 576. On the other hand, plaintiffs argue the Court of Appeal nonetheless should have given some deference to this interpretation because it is long-standing. We have repeatedly rejected plaintiffs’ argument. (Tidewater, supra, 14 Cal.4th at p. 576, citing Armistead v. State Personnel Board (1978) 22 Cal.3d *582 198, 204 [149 Cal.Rptr. 1, 583 P.2d 744].) The Court of Appeal correctly ruled that the DLSE interpretation of “hours worked” in its 1989 Operations and Procedures Manual should be given no deference and also properly determined that it must interpret Wage Order No. 14-80 to decide its enforcement in this case.
Wage Order No. 14-80 defines “hours worked” as “the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so.” (Subd. 2(G).) Plaintiffs argue that because they are compelled to travel on Royal’s buses, they are “subject to the control of an employer,” thus making their compulsory travel time compensable as “hours worked.” (Ibid.) Pointing to the plain language of “hours worked,” plaintiffs maintain the “suffered or permitted to work” language does not limit whether time spent “subject to the control of an employer” is compensable. (Ibid.) We agree.
The word “includes” introduces the “suffered or permitted to work” language of Wage Order No. 14-80. (Subd. 2(G).) Because “includes” is generally a term of enlargement (Ornelas v. Randolph (1993) 4 Cal.4th 1095, 1101 [17 Cal.Rptr.2d 594, 847 P.2d 560]), the definition of “hours worked” is expanded by, rather than limited to, the time spent when an employee is “suffered or permitted to work.” (Subd. 2(G).) Indeed, the two phrases— “time during which an employee is subject to the control of an employer” and “time the employee is suffered or permitted to work, whether or not required to do so” (ibid.)—can also be interpreted as independent factors, each of which defines whether certain time spent is compensable as “hours worked.” Thus, an employee who is subject to an employer’s control does not have to be working during that time to be compensated under Wage Order No. 14-80. (See Bono Enterprises, Inc. v. Bradshaw (1995) 32 Cal.App.4th 968, 974-975 [38 Cal.Rptr.2d 549] (Bono) [interpreting the common meaning of “hours worked” in IWC wage order No. 1-89], disapproved on other grounds in Tidewater, supra, 14 Cal.4th at pp. 573-574; Aguilar v. Association for Retarded Citizens (1991) 234 Cal.App.3d 21, 30 [285 Cal.Rptr. 515] (Aguilar).)
While cases interpreting the phrase “hours worked” have not thoroughly examined the definition’s scope or defined the relationship between the two clauses, they nonetheless support the view that the “suffered or permitted to work” clause in Wage Order No. 14-80 does not limit the “control” clause under the definition of “hours worked.” (Subd. 2(G); see, e.g., Bono, supra, 32 Cal.App.4th 968; Aguilar, supra, 234 Cal.App.3d 21; see also Madera Police Officers Assn. v. City of Madera (1984) 36 Cal.3d 403, 410 [204 *583 Cal.Rptr. 422, 682 P.2d 1087] [“Code 7” meal breaks for police department employees can be counted as hours worked under a two-part analysis— whether the restrictions on employees are “primarily directed toward the fulfillment of the employer’s requirements and policies,” and whether employees are “substantially restricted during Code 7 time, so as to be unable to attend to private pursuits”]; Monzon, supra, 224 Cal.App.3d at p. 48; id. at p. 50 (conc. & dis. opn. of Johnson, J.) [ambulance drivers who sleep in designated sleeping area are “subject to the control of the employer,” and absent an exception excluding the time spent sleeping as compensable, it counts as “hours worked”]; cf. Brewer v. Patel (1993) 20 Cal.App.4th 1017, 1021 [25 Cal.Rptr.2d 65] [motel employees who reside on the premises are “subject to the control of an employer”, but must “carry[] out assigned duties” to be compensated under former IWC wage order No. 5-89].)
In Bono, the Court of Appeal found that employees who were required to remain on the work premises during their lunch hour had to be compensated for that time under the definition of “hours worked.” (Bono, supra, 32 Cal.App.4th at p. 975.) The Bono court focused solely on the “subject to the control of an employer” clause. (Id. at pp. 974-975.) Relying on the dictionary definition of “control,” it interpreted the clause to mean when an employer “directs, commands or restrains” an employee. (Id. at p. 975.) Thus, “[w]hen an employer directs, commands or restrains an employee from leaving the work place during his or her lunch hour and thus prevents the employee from using the time effectively for his or her own purposes, that employee remains subject to the employer’s control. According to [the definition of hours worked], that employee must be paid.” (Ibid.) The Bono court, on the facts before it, did not find that the employees worked during their lunch hour, nor did it reach the issue whether the “suffered or permitted to work” language otherwise limited their right to compensation.
Similarly, in Aguilar, the Court of Appeal held that the time an employer required personal attendant employees to spend at its premises, even when they were allowed to sleep, should be considered “horns worked.”[4] (Aguilar, supra, 234 Cal.App.3d at p. 30.) As in Bono, the Aguilar court found that the *584 employees were “subject to the control of an employer” and did not consider whether or not the employees were “suffered or permitted to work.” (Aguilar, supra, 234 Cal.App.3d at p. 30.) Instead, the court held the employees should be compensated for the time they spent sleeping while on the employer’s premises, even though they performed no work during that time. (Ibid.)
Arguing the “control” clause functions independently of the “suffered or permitted to work” clause, plaintiffs’ amici curiae Asian Law Caucus, Inc., et al., rely on two DLSE advice letters, entitled “On-Call” Time—Beepers, and Compensable Time. Unlike interpretive policies contained in the DLSE’s 1989 Operations and Procedures Manual, advice letters are not subject to the rulemaking provisions of the APA. (Tidewater, supra, 14 Cal.4th at p. 571; see also Yamaha Corp. of America v. State Bd. of Equalization (1998) 19 Cal.4th 1, 21 [78 Cal.Rptr.2d 1, 960 P.2d 1031] (conc. opn. of Mosk, J.) (Yamaha).) Although Royal correctly observes that the factual situations these advice letters address may be distinguished from this case, we nonetheless find persuasive the following general statement of “hours worked” the DLSE made in each of these letters: “Under California law it is only necessary that the worker be subject to the ‘control of the employer’ in order to be entitled to compensation.” (Cal. Dept. Industrial Relations, DLSE Chief Counsel H. Thomas Cadell, advice letter, “On-Call”. Time—Beepers (Mar. 31, 1993) pp. 2-3; same author, advice letter,' Compensable Time (Feb. 3, 1994) p. 3 [discussing clothes-changing time].) This DLSE interpretation is consistent with our independent analysis of hours worked.
In determining that plaintiffs’ compulsory travel time may be compensable under just the “control” language, we do not agree with the Court of Appeal that we would be ignoring the “suffered or permitted to work” language of the “hours worked” definition. (Subd. 2(G).) The Court of Appeal’s belief implicitly rests on the assumption that whenever an employee is “suffered or permitted to work, whether or not required to do so” (ibid.), that employee is subject to an employer’s control; in other words, the “suffered or permitted to work” part of the definition cannot be independently satisfied. This assumption is incorrect.
Contrary to the Court of Appeal’s interpretation, the phrase “suffered or permitted to work, whether or not required to do so” (subd. 2(G)) encompasses a meaning distinct from merely “working.” Along with other amici curiae, the California Labor Commissioner notes that “the time the employee is suffered or permitted to work, whether or not required to do so” *585 (ibid.) can be interpreted as time an employee is working but is not subject to an employer’s control. This time can include work such as unauthorized overtime, which the employer has not requested or required. “Work not requested but suffered or permitted is work time. For example, an employee may voluntarily continue to work at the end of the shift. . . . The employer knows or has reason to believe that he is continuing to work and the time is working time. [Citations.]” (29 C.F.R. § 785.11 (1998).) “In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed.” (29 C.F.R. § 785.13 (1998).) Although our state cases have not interpreted the phrase, federal cases have discussed the meaning of “suffer or permit to work” defining “[e]mploy” under the FLSA. (29 U.S.C. § 203(g).) “ ‘[T]he words “suffer” and “permit” as used in the statute mean “with the knowledge of the employer.” ’ [Citation.] Thus an employer who knows or should have known that an employee is or was working overtime must comply with the provisions of [29 U.S.C.] § 207 [maximum hours].” (Forrester v. Roth's I. G. A. Foodliner, Inc. (9th Cir. 1981) 646 F.2d 413, 414; see also 29 C.F.R §§ 785.11, 785.13.)
Implicitly relying on the Court of Appeal’s revised definition of “hours worked” (“the definition of ‘hours worked’ should mean the hours suffered or permitted to work [in an agricultural occupation], whether or not required to do so”), Royal argues the definition of “[e]mployed in an agricultural occupation” in Wage Order No. 14-80 (subd. 2(C)(4)) supports its claim that plaintiffs’ compulsory travel time is not compensable. Because the phrase “transportation on the farm or to the place of first processing or distribution” (ibid.) is included in the definition of “[e]mployed in an agricultural occupation” (subd. 2(C)), Royal asserts that other types of transportation are accordingly excluded, based on the principle of statutory construction that the inclusion of one term excludes another. Thus, Royal contends plaintiffs’ compulsory travel time is excluded and is therefore not compensable as “hours worked.” Royal’s contention, however, is based on the Court of Appeal’s revised definition, which we find to be improper.
In redefining “hours worked,” the Court of Appeal substitutes other words for the express language contained under “hours worked,” which amounts to improper judicial legislation. (County of Santa Clara v. Perry (1998) 18 Cal.4th 435, 446 [75 Cal.Rptr.2d 738, 956 P.2d 1191] [“ ‘ “ ‘[Whatever may be thought of the wisdom, expediency, or policy of the act [citations],’ ” ’ we have no power to rewrite the statute to make it conform to a presumed intention that is not expressed. [Citations.]”) Rather than focusing solely on the express definition of “hours worked,” the Court of Appeal extended its review to the definitions of “[e]mployed in an agricultural occupation” and “[e]mploy” contained in Wage Order No. 14-80. (Subd. 2(C), (D).)
*586 Although the definition of “[ejmploy” (“to engage, suffer, or permit to work”) (subd. 2(D)) may parallel language within the “hours worked” definition (“suffered or permitted to work”) (subd. 2(G)), nothing within Wage Order No. 14-80 suggests reading the definition of “hours worked” as the Court of Appeal revised it. Wage Order No. 14-80 expressly defines “[ejmployed in an agricultural occupation” as the occupations described in subdivision 2(C)(1) through (7). (Subd. 2(C).) Thus, contrary to Royal’s contention, the definition of “[ejmployed in an agricultural occupation” (ibid.) does not reference the type of work or activity that may be compensable, but rather lists the kinds of occupations that are subject to Wage Order No. 14-80 (“This Order shall apply to all persons employed in an agricultural occupation . . . .”) (Subd. 1.) Accordingly, we reject Royal’s argument that the definition of “[ejmployed in an agricultural occupation” (subd. 2(C)) supports its argument against making plaintiffs’ compulsory travel time compensable.
We also reject Royal’s contention that plaintiffs were not under its control during the required bus ride because they could read on the bus, or perform other personal activities. Permitting plaintiffs to engage in limited activities such as reading or sleeping on the bus does not allow them to use “the time effectively for [their] own purposes.” (Bono, supra, 32 Cal.App.4th at p. 975.) As several amici curiae observe, during the bus ride plaintiffs could not drop off their children at school, stop for breakfast before work, or run other errands requiring the use of a car. Plaintiffs were foreclosed from numerous activities in which they might otherwise engage if they were permitted to travel to the fields by their own transportation. Allowing plaintiffs the circumscribed activities of reading or sleeping does not affect, much less eliminate, the control Royal exercises by requiring them to travel on its buses and by prohibiting them from effectively using their travel time for their own purposes. Similarly, as one amicus curiae suggests, listening to music and drinking coffee while working in an office setting can also be characterized as personal activities, which would not otherwise render the time working noncompensable.
Royal argues that this interpretation of “hours worked” is so broad that it encompasses all activity the employer “requires,” including all commute time, because employees would not commute to work unless the employer required their presence at the work site, and all grooming time, because employees might not, for example, shave unless the employer’s grooming policy required them to do so. We disagree. Royal does not consider the level of control it exercises by determining when, where, and how plaintiffs must travel. In contrast to Royal’s employees, employees who commute to work on their own decide when to leave, which route to take to work, and *587 which mode of transportation to use. By commuting on their own, employees may choose and may be able to run errands before work and to leave from work early for personal appointments. The level of the employer’s control over its employees, rather than the mere fact that the employer requires the employees’ activity, is determinative. (See Bono, supra, 32 Cal.App.4th at p. 975; Aguilar, supra, 234 Cal.App.3d at p. 30.)
Arguing that the compelled nature of plaintiffs’ travel is not dispositive, Royal underscores the Court of Appeal’s policy argument: “Since the commute was something that would have had to occur regardless of whether it occurred on Royal buses, and [plaintiffs] point to no particular detriment that ensued from riding the Royal buses,” compensating employees for this commute time would not “make sense, as a matter of policy.” We are not persuaded. First, we emphasize that we should not engage in needless policy determinations regarding wage orders the IWC promulgates. “[R]eview of the [IWC]’s wage orders is properly circumscribed. ... ‘A reviewing court does not superimpose its own policy judgment upon a quasi-legislative agency in the absence of an arbitrary decision . . . .’” (Industrial Welfare Com. v. Superior Court (1980) 27 Cal.3d 690, 702 [166 Cal.Rptr. 331, 613 P.2d 579] (Industrial Welfare Com.).) Second, the Court of Appeal’s policy argument in this case suffers from the court’s failure to distinguish between travel that the employer specifically compels and controls, as in this case, and an ordinary commute that employees take on their own. When an employer requires its employees to meet at designated places to take its buses to work and prohibits them from taking their own transportation, these employees are “subject to the control of an employer,” and their time spent traveling on the buses is compensable as “hours worked.” (Subd. 2(G).)
Interpreting the plain language of “hours worked” (subd. 2(G)), we find that plaintiffs’ compulsory travel time, which includes the time they spent waiting for Royal’s buses to begin transporting them, was compensable. Royal required plaintiffs to meet at the departure points at a certain time to ride its buses to work, and it prohibited them from using their own cars, subjecting them to verbal warnings and lost wages if they did so. By “ ‘directing]’ ” and “ ‘commanding]’ ” plaintiffs to travel between the designated departure points and the fields on its buses, Royal “ ‘controlled]’ ” them within the meaning of “hours worked” under subdivision 2(G). (Bono, supra, 32 Cal.App.4th at pp. 974-975.)
This conclusion should not be construed as holding that all travel time to and from work, rather than compulsory travel time as defined above, is compensable. Therefore, while the time plaintiffs spent traveling on Royal’s buses to and from the fields is compensable as “hours worked” under *588 subdivision 2(G), the time plaintiffs spent commuting from home to the departure points and back again is not. Moreover, we emphasize that employers do not risk paying employees for their travel time merely by providing them transportation. Time employees spend traveling on transportation that an employer provides but does not require its employees to use may not be compensable as “hours worked.” (Ibid.) Instead, by requiring employees to take certain transportation to a work site, employers thereby subject those employees to its control by determining when, where, and how they are to travel. Under the definition of “hours worked,” that travel time is compensable. (Subd. 2(G); see ante, at p. 587.)
B. Weight of Federal Authority
Although we find plaintiffs’ compulsory travel time is compensable under the plain language of Wage Order No. 14-80, we must necessarily examine the federal FLSA (29 U.S.C. § 201 et seq.), the Portal-to-Portal Act of 1947 (Portal-to-Portal Act) (29 U.S.C. § 251 et seq.), and related federal cases and regulations, which the Court of Appeal extensively discussed in reaching a different conclusion. Royal argues that the Court of Appeal’s reliance on federal authority was minimal, and, at the same time, contends that we should give deference to federal authority in this case. For reasons that follow, we conclude that the Court of Appeal, notwithstanding its attempt to separate its analyses of federal and state labor law, confounded the two differing bodies of law, leading in part to its erroneous interpretation of Wage Order No. 14-80. Further rejecting Royal’s contention, we conclude that the federal statutory scheme, which differs substantially from the state scheme, should be given no deference.
Accepting Royal’s argument that federal authority should serve as persuasive guidance on this issue, the Court of Appeal determined that “[t]he federal statutory scheme is not identical to the California scheme but the thrust of the laws is similar.” Absent from this determination, however, is any analysis of what aspect or characteristic of these two extensive statutory schemes make their “thrust[s] . . . similar.” In determining how much weight to give federal authority in interpreting a California wage order, courts are cautioned to make this comparative analysis (Ramirez v. Yosemite Water Co. (1999) 20 Cal.4th 785, 798 [85 Cal.Rptr.2d 844, 978 P.2d 2] (Ramirez)), which we undertake here.
First, we recognize that the FLSA does not include an express definition of “hours worked,” except “in the form of a limited exception for clothes-changing and wash-up time” under 29 United States Code section 203(o). (29 C.F.R. § 785.6 (1998); see also Bono, supra, 32 Cal.App.4th at p. 976; *589 cf. Monzon, supra, 224 Cal.App.3d at pp. 45-46.) However, the FLSA specifically defines the term “[e]mploy,” which “includes to suffer or permit to work.” (29 U.S.C. § 203(g).) Federal regulations implementing the FLSA define “hours worked” to include: “(a)[A]ll time during which an employee is required to be on duty or to be on the employer’s premises or at a prescribed workplace and (b) all time during which an employee is suffered or permitted to work whether or not he is required to do so.” (29 C.F.R. § 778.223 (1998); see also 29 C.F.R. §§ 553.221(b), 785.7 (1998).)
As the Court of Appeal observed, the Portal-to-Portal Act (29 U.S.C. §251 et seq.), which amended the FLSA, relieves employers from paying minimum wages or overtime compensation to employees for the following activities: “(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and (2) activities which are preliminary to or postliminary to said principal activity or activities . . . .” (29 U.S.C. § 254(a).) Thus, ordinary travel from home to work, “which is a normal incident of employment,” is not compensable time under the FLSA and Portal-to-Portal Act. (29 C.F.R. § 785.35 (1998).)
Some courts, as the Court of Appeal noted, have also interpreted the FLSA and Portal-to-Portal Act to preclude paying employees for their time spent traveling on employers’ buses from designated meeting points to the actual place of work when employees do not work during the travel period. (See, e.g., Vega v. Gasper (5th Cir. 1994) 36 F.3d 417, 425 (Vega) [farm workers assembled at pickup points and rode to the fields on buses that farm labor contractor-employer provided];[5] Dolan v. Project Const. Corp. (D.Colo. 1983) 558 F.Supp. 1308 (Dolan) [electricians checked in at the main camp and were required to ride to the jobsite on company-provided buses]; see also 29 C.F.R. § 790.7 (1998) [giving examples of preliminary and postliminary activities under the Portal-to-Portal Act].) Applying this federal authority, the Court of Appeal concluded that plaintiffs’ compulsory travel time is not compensable under federal law.
In discussing federal authority, however, the Court of Appeal failed to compare the federal definition of “hours worked” to the state definition *590 under Wage Order No. 14-80. While one of our lower courts has recognized the “parallel” nature of the federal and state definitions of “hours worked” (Monzon, supra, 224 Cal.App.3d at p. 46), the DLSE has underscored the substantial differences between the federal and state definitions in numerous advice letters. (See Yamaha, supra, 19 Cal.4th at p. 21 (conc. opn. of Mosk, J.) [administrative interpretation embodied in opinion letter is persuasive].) We need not resolve the foregoing conflict, however, in that we do not believe the similarity or differences between the two definitions of “hours worked” is dispositive of whether plaintiffs’ compulsory travel time is compensable under state law. Instead, we find that the Portal-to-Portal Act, which expressly and specifically exempts travel time as compensable activity under the FLSA (29 U.S.C. § 254), should be the focus of our comparative analysis.
The California Labor Code and IWC wage orders do not contain an express exemption for travel time similar to that of the Portal-to-Portal Act.[6] As set forth in its findings and declaration of policy, Congress enacted the Portal-to-Portal Act in 1947 partly in response to its concern that the FLSA “has been interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees . . . .” (29 U.S.C. § 251; see also Dolan, supra, 558 F.Supp. at pp. 1309-1310.) Indeed, in these findings, Congress set forth numerous factors justifying the Portal-to-Portal Act’s enactment, from “(1) the payment of such liabilities would bring about financial ruin of many employers and seriously impair the capital resources of many others . . .” to “(10) serious and adverse effects upon the revenues of Federal, State, and local governments would occur.” (29 U.S.C. § 251.) In addition, the congressional declaration of policy in this section identifies the need “to correct existing evils (1) to relieve and protect interstate commerce from practices which burden and obstruct it. . . .” (29 U.S.C. § 251(b)(1).)
In contrast to these specific findings showing the congressional intent underlying the Portal-to-Portal Act, the Legislature has not similarly identified existing evils under state law. Royal and its amicus curiae California *591 Farm Bureau Federation identify state statutes, like the California Clean Air Act of 1988 (Health & Saf. Code, § 40910 et seq.), and the Katz-KoppBaker-Campbell Transportation Blueprint for the Twenty-First Century, addressing, in part, traffic congestion (Gov. Code, § 65088 et seq.), as public policy grounds for not making plaintiffs’ compulsory travel time compensable. Although these statutes promote cognizable benefits to the environment that may be realized when workers share transportation, we are not convinced that they bear directly on whether compulsory travel time is compensable. They do not compare to the express findings and declaration of policy in the federal statute. (29 U.S.C. § 251.) Accordingly, we do not agree with the Court of Appeal that the thrusts of the federal and state statutory schemes are similar, for purposes of deciding whether plaintiffs’ compulsory travel time is compensable.
Before June 1947, California’s definition of “hours worked” was entitled “Hours Employed” in most wage orders and was defined differently.[7] However, in 1947, when Congress enacted the Portal-to-Portal Act, the IWC amended the definition to the current version of “hours worked.” Royal’s amicus curiae, the Employers Group, argues that the 1947 amendment, which eliminated specific language regarding waiting time and time when employees are required to be on their employer’s premises and on duty (in addition to “time when an employee is required or instructed to travel on the employer’s business after the beginning and before the end of her work day”; see, e.g., Cal. Admin. Code, tit. 8, § 11346, subd. (h)(2)), covered preliminary and postliminary activities, including travel time, which are not compensable under the Portal-to-Portal Act. Amicus curiae argues, therefore, that the IWC revised the definition of “hours worked” to correspond to the federal standard.
This argument proves too much. In addition to eliminating the cited language, the IWC added the phrase “the time during which an employee is subject to the control of an employer” to the definition of “hours worked.” *592 “Control” may encompass activities described by the eliminated language (as discussed ante, at p. 584). (See Bono, supra, 32 Cal.App.4th at pp. 974-975; Aguilar, supra, 234 Cal.App.3d at p. 30.) Absent convincing evidence of the IWC’s intent to adopt the federal standard for determining whether time spent traveling is compensable under state law, we decline to import any federal standard, which expressly eliminates substantial protections to employees, by implication. Accordingly, we do not give much weight to the federal authority on which the Court of Appeal relied. (See Ramirez, supra, 20 Cal.4th at pp. 794-798.)
Moreover, our departure from the federal authority is entirely consistent with the recognized principle that state law may provide employees greater protection than the FLSA. (Ramirez, supra, 20 Cal.4th at p. 795 [“IWC’s wage orders, although at times patterned after federal regulations, also sometimes provide greater protection than is provided under federal law in the [FLSA] . . . .”], citing Tidewater, supra, 14 Cal.4th at pp. 566-567; Aguilar, supra, 234 Cal.App.3d at p. 34; Skyline Homes, Inc. v. Department of Industrial Relations (1985) 165 Cal.App.3d 239, 247 [211 Cal.Rptr. 792], disapproved on other grounds in Tidewater, supra, 14 Cal.4th at pp. 572-573; see also Industrial Welfare Com., supra, 27 Cal.3d at p. 727.)[8] Indeed, we have recognized that “past decisions additionally teach that in light of the remedial nature of the legislative enactments authorizing the regulation of wages, hours and working conditions for the protection and benefit of employees, the statutory provisions are to be liberally construed with an eye to promoting such protection.” (Industrial Welfare Com., supra, 27 Cal.3d at p. 702.) Finally, we note that where the IWC intended the FLSA to apply to wage orders, it has specifically so stated. (See Cal. Code Regs., tit. 8, §§ 11040, subd. 2(H), 11050, subd. 2(H) [“Within the health care industry, the term ‘hours worked’ means the time during which an employee is suffered or permitted to work for the employer, whether or not required to do so, as interpreted in accordance with the provisions of the [FLSA]”].)
Royal attempts to downplay the extent to which the Court of Appeal relied on federal authority in reaching its decision, arguing that “federal authorities only provided minimal assistance to the Court in its decision.” We disagree. We do not perceive any other reason why the Court of Appeal would devote much discussion to the federal scheme, except to indicate the court’s view of the persuasiveness and weight of federal authority on this issue. This observation is more compelling in view of the Court of Appeal’s discussion *593 interpreting Wage Order No. 14-80, which contains little state authority, but cites the federal case, Vega, supra, 36 F.3d at page 425, and the Court of Appeal’s corresponding conclusion that plaintiffs’ “travel time appears to have been nothing more than an extended home-to-work-and-back commute.”
Notwithstanding Royal’s contention that the Court of Appeal did not place great weight on federal authority, Royal urges us to consider federal authority in determining whether the compulsory travel time is compensable. Royal cites California cases holding that because California wage laws are patterned on federal statutes, federal cases and regulations interpreting those federal statutes may serve as persuasive guidance for interpreting California law. (Building Material & Construction Teamsters' Union v. Farrell (1986) 41 Cal.3d 651, 658 [224 Cal.Rptr. 688, 715 P.2d 648]; Nordquist v. McGraw-Hill Broadcasting Co. (1995) 32 Cal.App.4th 555, 562 [38 Cal.Rptr.2d 221]; Monzon, supra, 224 Cal.App.3d at pp. 45-46; Hernandez v. Mendoza (1988) 199 Cal.App.3d 721, 726, fn. 1 [245 Cal.Rptr. 36]; Alcala v. Western Ag Enterprises (1986) 182 Cal.App.3d 546, 550 [227 Cal.Rptr. 453].)
Significantly, no case discusses the precise issues of whether travel time is compensable and whether the Portal-to-Portal Act applies. As discussed {ante, at pp. 590-591), Congress’s extensive findings underlying the Portal-to-Portal Act, and the absence of such findings in the state scheme, compel the conclusion that federal and state law regarding travel time are dissimilar. Moreover, we recently disapproved of using federal regulations extensively to interpret a California wage order, without recognizing and appreciating the critical differences in the state scheme. {Ramirez, supra, 20 Cal.4th at p. 798.)
In Ramirez, we determined the meaning of “outside salesperson” under IWC wage order No. 7-80 (Cal. Code Regs., tit. 8, § 11070). After finding no California cases or regulations interpreting this wage order, the Court of Appeal turned to federal regulations, which employed a different, qualitative method (as opposed to a quantitative method under the California wage order) to decide whether an employee is an outside salesperson. (Ramirez, supra, 20 Cal.4th at pp. 796-797.) We found that the Court of Appeal erred in relying on federal authority to construe wage order No. 7-80. “In confounding federal and state labor law, and thereby providing less protection to state employees, the Court of Appeal and the trial court departed from the teaching that where the language or intent of state and federal labor laws substantially differ, reliance on federal regulations or interpretations to construe state regulations is misplaced.” (Ramirez, supra, 20 Cal.4th at p. *594 798.) “The federal authorities are of little if any assistance in construing state regulations which provide greater protection to workers.” (Bono, supra, 32 Cal.App.4th at p. 976.) Indeed, “federal law does not control unless it is more beneficial to employees than the state law.” (Aguilar, supra, 234 Cal.App.3d at p. 34, citing 29 U.S.C. § 218.)
After comparing federal and state authority, we conclude that the relevant portions of the FLSA and Portal-to-Portal Act differ substantially from Wage Order No. 14-80 and related state authority. Therefore, Royal’s reliance on federal authority, and the Court of Appeal’s deference to it, are not persuasive.
C. Public Policy Considerations
Royal and its amici curiae identify public policy considerations that weigh against making plaintiffs’ compulsory travel time compensable. They contend that employer-provided transportation reduces the number of cars in use, thereby reducing air pollution and traffic congestion. (See Cal. Clean Air Act of 1988 (Health & Saf. Code, § 40910 et seq.); Katz-Kopp-BakerCampbell Transportation Blueprint for the Twenty-First Century (Gov. Code, § 65088 et seq.).) In addition, Royal notes that many agricultural fields are located in remote areas not easily accessible by cars; allowing employees to drive their own cars to the fields increases the risk of accidents and injuries. Employee safety is a significant concern, which all employers should consider. Common sense also dictates that increased automobile emissions are likely to have a detrimental effect on produce being grown in California’s fields. Finally, on a practical level, employer-provided transportation benefits both employees and employers—employees travel to the work site free of charge, while employers can ensure enough employees are available and ready to work.
The foregoing considerations, however, do not override the plain language of Wage Order No. 14-80, which supports plaintiffs’ claim that their compulsory travel time is compensable as “hours worked.” In deciding Royal must compensate plaintiffs for this time, we nonetheless remain optimistic that employers will not be discouraged from providing free transportation as a service to their employees. As we have emphasized throughout, Royal required plaintiffs to ride its buses to get to and from the fields, subjecting them to its control for purposes of the “hours worked” definition. However, employers may provide optional free transportation to employees without having to pay them for their travel time, as long as employers do not require employees to use this transportation.
*595 III. Conclusion
We conclude that plaintiffs’ compulsory travel time is compensable as “hours worked” under Wage Order No. 14-80. Therefore, we reverse the Court of Appeal’s judgment and remand this action to the Court of Appeal for further proceedings consistent with this opinion.
George, C. J., Mosk, J., Kennard, J., Baxter, J., Werdegar, J., and Brown, J., concurred.
On May 10, 2000, the opinion was modified to read as printed above.

 Royal’s rules provided: “The employee will show up at the departure point of his appropriate area at the time indicated by his/her supervisor or foreman and the employee will park his/her personal vehicle. Then, at this same place, the employee will take the appropriate crew bus which will take him/her to his/her place of work. In the afternoon, after the employee has completed his/her shift, the bus will take the employee back to the original departure point, [¶] If for any reason the employee did not arrive at the departure center on time or decided to drive his/her personal vehicle to his/her place of work, he/she will be given a verbal warning the first time this occurs. [¶] If for the same reason or a different reason, the employee takes his/her personal vehicle to his/her place of work a second time, the company will call this to his/her attention, indicating that if this ever happens again, the company will take the necessary action to correct the problem and he/she will be sent home and lose the days [sic] work when this occurs.”

 We sometimes refer to this time as “compulsory travel time.” For reasons that follow, we adopt this reference to distinguish between travel to and from a work site that an employer *580 controls and requires, and an ordinary commute from home to work and back that employees take on their own. Accordingly, this compulsory travel time does not include the time plaintiffs spent commuting from home to the departure points and from the departure points back again.

 The interpretation in the DLSE’s 1989 Operations and Procedures Manual provided, in pertinent part: “Where employers provide transportation such as farm labor buses ‘for the convenience of the workers,’ it should be ascertained whether employees are allowed to drive their own cars to the job site or field. If not, the time they are required to be at the point to catch the bus is the beginning of their hours worked.”

 We recognize that Aguilar concerned the definition of “hours worked” under former IWC wage order No. 5-80 (now superseded by IWC wage order No. 5-89, set forth at Cal. Code Regs., tit. 8, § 11050). In contrast to Wage Order 14-80, former wage order No. 5-80’s definition of “hours worked” included an additional provision regarding compensable duties of an employee who resided on the employer’s premises. Further, this definition was subsequently revised in 1993 to include reference to the applicability of the federal Fair Labor Standards Act of 1938 (FLSA) (29 U.S.C. § 201 et seq.) to the health care industry. The Aguilar court did not consider the provision regarding an employee who resided at the premises (nor obviously the 1993 amendment regarding the FLSA) in determining that the time employees spent sleeping was compensable as hours worked. (Aguilar, supra, 234 *584 Cal.App.3d at p. 30.) There is no indication that employees in Aguilar were required to reside at the employer’s premises. (Id. at pp. 24, 33-34.)

 We find Vega, supra, 36 F.3d 417, to be consistent with our opinion. In contrast to plaintiffs, the employees in Vega “were not required to use [defendant] Gasper’s buses to get to work in the morning. They chose . . . how to get to and from work. Not all of Gasper’s field workers rode his buses.” (Vega, supra, 36 F.3d at p. 425.) Although the Vega court identified other factors, such as the fact that the workers did not load tools or prepare for work while on the buses, to support its finding that the travel time was “ordinary to-work or from-work travel and not compensable” under the Portal-to-Portal Act (Vega, supra, 36 F.3d at p. 425), we find the fact that the Vega employees were free to choose—rather than required—to ride their employer’s buses to and from work, a dispositive, distinguishing fact.

 Plaintiffs and their amici curiae argue Labor Code section 510 supports their claim that the compulsory travel time is compensable. The statute provides that certain time spent commuting “to and from the first place at which an employee’s presence is required by the employer” on employer-provided transportation for purposes of ridesharing (defined in Veh. Code, § 522), is excluded from the calculation of an eight-hour day. (Lab. Code, § 510.) Although both Royal and plaintiffs’ amici curiae have underscored certain portions of Labor Code section 510’s legislative history to support their respective positions, we are not persuaded that the section clearly applies to plaintiffs’ compulsory travel time. Because that time is compensable under the plain language of Wage Order No. 14-80, we decline to determine the exact relationship between Labor Code section 510 and the definition of “hours worked” under Wage Order No. 14-80, which is not an issue squarely before this court.

 For example, former IWC wage order No. 1 N. S. provided as follows: “ ‘Hours Employed’ means all time during which: [¶] (1) An employee is required to be on the employer’s premises, or to be on duty, or to be at a prescribed work place; or [¶] (2) An employee is suffered or permitted to work whether or not required to do so. Such time includes, but shall not be limited to, waiting time.” (Cal. Admin. Code, tit. 8, § 11181, subd. (f)(1), (2); see also id., § 11311, subd. (f)(1), (2) [containing additional language]; id., § 11381, subd. (f)(1), (2) [same].) In addition, plaintiffs refer to former IWC wage order No. 4 N. S., governing “Professional, Technical, Clerical and Similar Occupations,” which refers to “woman” and “minor,” and contains language regarding the “time when an employee is required or instructed to travel on the employer’s business after the beginning and before the end of her work day.” (Cal. Admin. Code, tit. 8, § 11346, subd. (h)(1), (2).) This language does not seem to implicate the compulsory travel time at issue here, but rather concerns time when employees must travel on business.

 Indeed, as amicus curiae Antonio Madrigal has noted, the FLSA provides less protection to agricultural employees, many of whom are exempted from minimum wage protections (29 U.S.C. § 213(a)(6)), and nearly all of whom are exempted from overtime protections. (29 U.S.C. § 213(b)(12),(13), (16).) In contrast, California has provided minimum wage and overtime protection to employees involved in agricultural activities under Wage Order Nos. 14-80, 13-80 and 8-80. (Cal. Code Regs., tit. 8, §§ 11140, 11130, 11080.)