[No. G030406. Fourth Dist., Div. Three. Dec. 30, 2003.]

PEDRO ESPINOZA, Plaintiff and Appellant, v.
CLASSIC PIZZA, INC., et al., Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II, A, B, D through H, K, and L.

**COUNSEL**

Ginez, Steinmetz & Associates, Rudy Ginez, Jr., and Paul W. Steinmetz for Plaintiff and Appellant.

Law Offices of Thomas R. Nigro and Thomas R. Nigro for Defendants and Respondents.

**OPINION**

**RYLAARSDAM, J.**—Plaintiff Pedro Espinoza appeals from a $13,517 judgment for overtime wages in his favor against defendant Classic Pizza, Inc. Owners of Classic Pizza, defendants Robert Blum (Robert) and Elaine Blum, were held to be jointly liable to the extent of $6,079. The court also awarded plaintiff $20,000 in attorney fees.

Plaintiff raises several issues: (1) the court improperly disregarded the parties' stipulation as to the amounts of his salary; (2) the court improperly calculated his regular rate of pay; (3) the court improperly calculated prejudgment interest; (4) the court erred in failing to award "waiting time" penalties; (5) the evidence does not support the finding he worked only 20 overtime hours per week; (6) the court erred in concluding the Blums were not personally liable for all overtime pay; (7) the court abused its discretion in awarding attorney fees by failing to explain its method of calculation; and (8) the court erred in imposing sanctions.

We agree with the first three of plaintiff's claims and therefore reverse and remand for the trial court to properly calculate the amount due. We disagree with him as to the fourth, fifth, and eighth issues. As to the sixth issue, the court did not err in finding the Blums were not personally liable for overtime for the first portion of plaintiff's employment but used the wrong date for when such personal liability began. Finally, because we remand for further proceedings for which additional attorney fees will be incurred, any claim of error with respect to such fees is moot.

## I

## FACTS

In 1994, plaintiff's brother, Magdaleno Espinoza (Magdaleno) approached the Blums about starting a pizza restaurant. He had experience in the business; at that time the Blums were operating a travel agency. They entered into an oral agreement to open the restaurant. In the next couple of months, the Blums incorporated Classic Pizza, Inc. The record is unclear whether Magdaleno ever owned an interest in the business. Robert testified the owners were "Myself, my wife. And [Magdaleno] had put down a $10,000 deposit claiming to buy into the business, wanting to buy into the business." He reiterated that this $10,000 payment was a "good faith deposit," showing that Magdaleno "wanted to buy into the business."

After the corporation was formed, the Blums and Magdaleno executed a written contract. It describes Classic Pizza as a partnership and provides that Magdaleno would be afforded "the opportunity to purchase an interest in the Partnership of up to forty-nine percent" after certain conditions were met. Robert testified that Magdaleno was a partner in the business by virtue of this agreement. Plaintiff also testified that the Blums told him that Magdaleno was their partner. In a later written contract, the parties agreed that Magdaleno would not become a partner. The business license was issued to "Classic Pizza, a partnership."

Although Magdaleno helped design the layout of the restaurant and determined what equipment was needed, the Blums paid for the equipment.

Once the business opened, Magdaleno operated it, initially with the assistance of the Blums. Magdaleno made the necessary purchases and Robert paid the bills. Plaintiff was employed in 1995, and thereafter he and Magdaleno "pretty much" ran the business. From August 1995 until September 1996, Magdaleno used a checking account under the name "Classic Pizza, Inc." to pay for supplies. During this period, all proceeds of the business were deposited in this account which was solely under Magdaleno's control. Robert testified that, because of difficulties in their relationship with Magdaleno, the Blums "[took] back over [*sic*] the business" in September 1996.

Plaintiff testified he worked at Classic Pizza from August 13, 1995, until June 12, 1999. He was off on Wednesdays. On Fridays and Saturdays he worked from 11:00 a.m. until 10:00 p.m.; on the other four days he worked from 11:00 a.m. until 9:00 p.m. Later, his working hours changed so he worked one hour less on Fridays, Saturdays, and Sundays. He first testified this change took place in June or August 1998; later, he stated the change occurred in December of that year. At the outset, he worked 62 hours per week; after his hours changed, he worked three hours less. When he was first employed, plaintiff was paid $300 per week; he had two subsequent pay increases. Originally he was paid in cash; beginning September 1997, he was paid by check drawn on an account in the name of Classic Pizza, Inc. Starting that year, Classic Pizza, Inc. furnished plaintiff with W-2 statements indicating varying amounts had been withheld for taxes. In fact these amounts were not withheld but were nevertheless paid to the IRS by his employer.

## II

## DISCUSSION

A., B.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### C. *The Court Miscalculated Plaintiff's Regular Rate of Pay and Overtime*

■ Plaintiff contends the trial court erred when it determined the amount of overtime he was due. Computation of an employee's overtime begins with a calculation of his or her "regular rate of pay." (See, e.g., Cal. Code Regs., tit. 8, § 11050, subd. 3(A).) The trial court calculated plaintiff's regular rate of pay by dividing his weekly salaries by 60, the number of hours the court found he worked. Relying on *Skyline Homes, Inc. v. Dept. of Industrial*

---

*See footnote, *ante*, page 968.

*Relations* (1985) 165 Cal.App.3d 239 [211 Cal.Rptr. 792] (*Skyline*), disapproved on other grounds in *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 572–573 [59 Cal.Rptr.2d 186, 927 P.2d 296], plaintiff contends the court should have used 40 hours as the divisor. As we explain, both plaintiff and the trial court are each partially correct.

At issue here are two different wage orders issued by the Industrial Wage Commission (IWC) that govern overtime pay. IWC wage order No. 5-89, effective July 1, 1989, and amended June 29, 1993 (Cal. Code Regs., tit. 8, § 11050), regulates the public housekeeping industry and covered plaintiff's employment from October 1, 1995, through December 31, 1997. This order mandates overtime pay for a workweek exceeding 40 hours *or* a workday exceeding eight hours. (Cal. Code Regs., tit. 8, § 11050, subd. 3(A).) *Skyline* held that, under an identical wage order, the method for computing the "regular rate of pay" for an employee who receives a fixed weekly salary for a fluctuating workweek is to divide that salary by no more than 40 hours. (*Skyline, supra,* 165 Cal.App.3d at pp. 249–250.)

In reaching this conclusion, *Skyline* compared the rules set out under a wage order identical to No. 5-89 with those employed under the federal statute which does not require overtime pay for days during which employees work more than eight hours, as long as they do not work more than 40 hours per week. (*Skyline, supra,* 165 Cal.App.3d at pp. 246–248.) *Skyline* explained that when an employee regulated by the federal statute receives a fixed salary that is designed to provide basic nonovertime compensation for all hours worked, the method for computing his or her "regular rate of pay" is the fluctuating workweek method. (*Id.* at p. 247.)

■   Under the fluctuating workweek method, "the employee's 'regular rate' of pay is determined by dividing the number of hours actually worked in the particular workweek into the amount of the fixed weekly salary (rather than dividing the salary by the standard non-overtime workweek of 40 hours) for overtime compensation. [Citation.]" (*Skyline, supra,* 165 Cal.App.3d at p. 247.) The *Skyline* court reasoned that, because the work*week* is the unit of time used under the federal statute, the total number of hours worked during that workweek is used as the divisor but that, because the wage order applied in *Skyline* uses the work*day* as the unit of time, the divisor cannot exceed 40 hours. (*Id.* at pp. 248–249.) Thus, for the time period plaintiff was covered by wage order No. 5-89, i.e., from October 1, 1995, through December 31, 1997, plaintiff's fixed gross weekly salaries should be divided by 40 hours to arrive at his regular rate of pay.

■   However, a different wage order was in effect during the latter portion of plaintiff's employment. Former wage order No. 5-98 (now nullified

and superceded by reinstated wage order No. 5-89 set out in Cal. Code Regs., tit. 8, § 11050), adopted effective January 1, 1998, regulated plaintiff from that date until the termination of his employment. That order, like the federal overtime statute discussed in *Skyline*, mandated overtime pay only for hours worked in excess of 40 hours per week. (Former Cal. Code Regs., tit. 8, § 11050, subd. 3(A); 29 U.S.C. § 207(a)(1).) Therefore, the fluctuating workweek method governs plaintiff from January 1, 1998, through June 12, 1999; i.e., to determine plaintiff's regular rate of pay for that period, plaintiff's fixed gross weekly salaries should be divided by 60, the total number of hours plaintiff worked per week.

Defendants argue plaintiff is not entitled to overtime pay because there was a specific agreement to pay him a fixed salary which would include overtime. They rely on *Hernandez v. Mendoza* (1988) 199 Cal.App.3d 721 [245 Cal.Rptr. 36] where the court noted, in dictum, that "an *explicit, mutual* wage agreement [for] a fixed salary [may] serve to compensate an employee for the number of hours worked under statutory overtime requirements. [Citations.]" (*Id.* at p. 725.) But *Hernandez* held that where the parties had merely agreed on a salary of $300 per week, there was no such explicit, mutual agreement. And it followed *Skyline* by using a divisor of 40 to determine the regular rate of pay for an employee who worked more than eight hours per day and more than 40 hours per week. (*Hernandez,* at pp. 725–726, 728.)

Here, the parties agreed on the amount plaintiff would be paid per week, and there was a general, although rather vague, understanding as to the total hours he was to work; but there was no agreement as to an hourly rate of pay. *Ghory v. Al-Lahham* (1989) 209 Cal.App.3d 1487 [257 Cal.Rptr. 924] held that what it described as an agreement to work for "a monthly salary [that] was intended to cover both regular pay and overtime" (*id.* at p. 1489) did not qualify as the kind of explicit, mutual wage agreement that would eliminate overtime pay. The court noted such a contract must "specif[y] the basic hourly rate of compensation upon which the guaranteed salary is based," and the agreement must be made "before the work is performed . . . ." (*Id.* at p. 1491.) That did not occur here.

On remand, in calculating plaintiff's regular rate of pay, the court shall use a divisor of 40 for the period beginning with plaintiff's employment and ending December 31, 1997, and a divisor of 60 for the period beginning January 1, 1998, through the end of plaintiff's employment.

D.–H. *

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 968.

## I. The Trial Court Incorrectly Computed Prejudgment Interest

■ An employee who sues civilly to recover unpaid overtime is entitled to "interest thereon." (Lab. Code, § 1194, subd. (a).) Interest accrues from the day the right to recover overtime vests. (Civ. Code, § 3287, subd. (a); *Olson v. Cory* (1983) 35 Cal.3d 390, 402 [197 Cal.Rptr. 843, 673 P.2d 720].) The interest is computed "from the date of accrual to the entry of judgment. [Citations.]" (*Mass v. Board of Education* (1964) 61 Cal.2d 612, 624 [39 Cal.Rptr. 739, 394 P.2d 579].)

■ The court calculated interest on an annual basis. But plaintiff's overtime wages accrued on a weekly basis. Therefore, he is entitled to prejudgment interest computed from the date on which each of his overtime payments was due. On remand the court shall compute interest due plaintiff accordingly.

## J. The Trial Court Properly Imposed Sanctions

Before trial, plaintiff applied for an order compelling discovery of the Blums' checking account records. The court denied the application. Plaintiff's lawyer then served the Blums' bank with a subpoena duces tecum to produce records for one of the accounts to which the trial court had denied him access. Defendants moved for an order quashing the subpoena; the court granted the motion and at the hearing, the court reiterated that it would not permit plaintiff to have those records. Undaunted, plaintiff then served another subpoena duces tecum for the same records. The court granted defendants' subsequent motion to quash and for sanctions awarded $923 against plaintiff and his lawyer pursuant to Code of Civil Procedure section 2023, finding the subpoena violated the two earlier orders.

■ Plaintiff contends the sanction order was improper. We review the propriety of a discovery sanctions award for abuse of discretion and uphold it unless it " 'exceeds the bounds of reason . . . .' [Citation.]" (*Foothill Properties v. Lyon/Copley Corona Associates* (1996) 46 Cal.App.4th 1542, 1557 [54 Cal.Rptr.2d 488].)

■ Plaintiff argues sanctions were improper because it was error to grant the motion to quash. We presume an order of a lower court to be correct. (*Foothill Properties v. Lyon/Copley Corona Associates, supra,* 46 Cal.App.4th at p. 1555.) " ' "All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." [Citations.]' [Citation.]" (*Ibid.*) Plaintiff cites no facts that affirmatively show error, and based on the record before us, it might have been an abuse of discretion for the trial court not to award sanctions. If the court erred

in granting the first two motions, plaintiff's remedy was a challenge in the court of appeal. But, regardless of whether he agreed with the orders, he was not at liberty to ignore them. ■ A lawyer's duty to obey a court order is not dependent upon the correctness of that order.

Plaintiff also asserts the court did not adequately articulate its reasons for imposing sanctions, in violation of his due process rights. But in the order awarding sanctions, the court specified they were based on plaintiff's service of the second subpoena duces tecum in violation of the two earlier rulings. This was sufficient.

Finally, plaintiff maintains Code of Civil Procedure sections 2023 and 1987.2 do not apply to his conduct. The order was based on section 2023, subdivision (a)(1), which permits a court to sanction a party who "[p]ersist[s], over objection and without substantial justification, in an attempt to obtain information or materials that are outside the scope of permissible discovery." (Code Civ. Proc., § 2023.) The facts support an award of sanctions under the statute.

K., L.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

III

DISPOSITION

The judgment is reversed in part and remanded for further proceedings in the trial court. On remand, the trial court shall recompute damages, using the following methodology: (1) Adopt the stipulation of the parties as to appellant's gross weekly salaries ($300 from November 1, 1995, through September 15, 1997; $348.08 from September 15, 1997, through June 1998; and $379.82 from July 1998 through the first week of June 1999); (2) Apply the trial court's determination that appellant worked 20 overtime hours per week; (3) Use 40 as the divisor to determine appellant's regular rate of pay for the period commencing with his employment through December 31, 1997; (4) Use 60 as the divisor to determine appellant's regular rate of pay for the period January 1, 1998, through the termination of his employment;

---

*See footnote, *ante*, page 968.

(5) Compute the Blums' joint and several liability for overtime wages incurred commencing September 1, 1996; (6) Compute interest due from the date that each overtime payment was due; and (7) Determine reasonable attorney fees incurred by appellant in the entirety of the proceedings and award that amount as part of the judgment. Appellant shall recover his costs on appeal.

Sills, P. J., and Moore, J., concurred.