[No. B218171. Second Dist., Div. Eight. Feb. 7, 2011.]

CARLOS ARECHIGA, Plaintiff and Appellant, v.
DOLORES PRESS, INC., Defendant and Respondent.

**COUNSEL**

Law Offices of Stephen Glick, Stephen Glick and Anthony Jenkins for Plaintiff and Appellant.

Glaser, Weil, Fink, Jacobs, Howard & Shapiro, Amman A. Khan and Elliott S. Henry for Defendant and Respondent.

**OPINION**

**RUBIN, J.**—Carlos Arechiga appeals from the court's judgment dismissing his complaint seeking payment of additional overtime wages from his former employer, Dolores Press, Inc. We affirm.

## FACTS AND PROCEEDINGS

Appellant Carlos Arechiga began working as a janitor for respondent Dolores Press, Inc. (Employer), in January 2000. Arechiga and Employer orally agreed he would work 11 hours a day, six days a week, for a total of 66 hours per week. Because Arechiga was a nonexempt employee under labor law, they agreed his work schedule meant he earned 26 hours of overtime pay each week. By agreement, Employer paid Arechiga $880 a week.

In October 2003, Arechiga and Employer signed a written "Employment Separation Agreement," followed that same day by a written "Employment

Agreement" which they both signed. Apparently, Employer directed that they enter into a written agreement in order to institute privacy safeguards for members of a religious body affiliated with Employer. Other than adding privacy provisions, the written employment agreement did not change the terms of Arechiga's employment. The written agreement stated "Employee shall be paid a salary/wage of $880.00"; the word "salary" was circled and the dollar amount was filled in by hand.

Three years later in September 2006, Employer terminated Arechiga. In November 2007, Arechiga filed a complaint alleging multiple causes of action against Employer. Except for a cause of action for unfair business practices (Bus. & Prof. Code, § 17200 et seq.), Arechiga eventually dismissed, or the court summarily adjudicated and dismissed, all of Arechiga's causes of action, leaving for trial only his unfair business practice claim.[1] Arechiga predicated that claim on his contention that Labor Code section 515 governed his employment agreement. Citing subdivision (d) of that statute, Arechiga asserted the court must find that his salary of $880 compensated him only for a regular 40-hour workweek at an imputed base pay of $22 per hour ($880 ÷ 40 hours), and did not include his regularly scheduled 26 hours of overtime. Subdivision (d) states: "For the purpose of computing the overtime rate of compensation required to be paid to a nonexempt full-time salaried employee, the employee's regular hourly rate shall be 1/40th of the employee's weekly salary." (Lab. Code, § 515, subd. (d).) Thus, according to Arechiga, Employer owed him for the three years at issue in the complaint overtime pay equal to 1.5 times his hourly base pay for his regularly scheduled 26 hours of weekly overtime.[2] (Lab. Code, § 511 [overtime pay shall be 1.5 times base pay].) Employer disagreed. It asserted that California's "explicit mutual wage agreement" doctrine applied. Under that doctrine, an employer and employee may lawfully agree to a guaranteed fixed salary so long as the employer pays the employee for all overtime at least one and one-half times the employee's basic rate.

The court entered judgment for Employer. The court found that an explicit mutual wage agreement existed between Arechiga and Employer under which Arechiga's fixed salary of $880 lawfully compensated him for both his regular and overtime work based on a regular hourly wage of $11.14 and an hourly overtime wage of $16.71. In finding for Employer, the court rejected Arechiga's assertion that Labor Code section 515, subdivision (d), outlawed explicit mutual wage agreements. This appeal followed.

---

[1] The dismissed causes of action were unlawful nonpayment of overtime compensation; failure to pay minimum wage; failure to provide required meal periods; failure to provide required rest periods; failure to maintain required records; and failure to pay all earned wages upon separation.

[2] A three-year statute of limitations applied to Arechiga's claim for unpaid overtime. (Code Civ. Proc., § 338, subd. (a).)

## DISCUSSION

### 1. *Substantial Evidence of Explicit Mutual Wage Agreement*

The trial court found substantial evidence that Arechiga and Employer had entered into an explicit mutual wage agreement. (See *Espinoza v. Classic Pizza, Inc.* (2003) 114 Cal.App.4th 968, 974 [8 Cal.Rptr.3d 381]; *Ghory v. Al-Lahham* (1989) 209 Cal.App.3d 1487, 1491 [257 Cal.Rptr. 924].) An explicit mutual wage agreement "requires an agreement which specifies the basic hourly rate of compensation upon which the guaranteed salary is based before the work is performed, and the employee must be paid at least one and one-half times the agreed-upon rate for hours in excess of forty." (*Ghory*, at p. 1491.) The trial court explained in its statement of decision: "Under California law, when there is an explicit mutual wage agreement between the parties, even a fixed salary like the one [Arechiga] received serves to adequately compensate him for both overtime and regular pay. . . . In order to establish an explicit, mutual wage agreement, [Employer] was required to show that the parties entered into an agreement that specified (1) the days that [Arechiga] would work each week; (2) the number of hours [Arechiga] would work each day; (3) that [Arechiga] would be paid a guaranteed salary of a specific amount; (4) that [Arechiga] was told the basic hourly rate upon which his salary was based; (5) that [Arechiga] was told his salary covered both his regular and overtime hours; and (6) the agreement must have been reached before the work was performed. [Employer] has met its burden. [¶] The first three elements of the explicit, mutual wage agreement were stipulated to by the parties in their joint trial statement and read into the record as evidence. It was stipulated that an oral agreement was reached between the parties, wherein [Arechiga] would work Monday through Saturday, 11 hours a day, and for these hours he would receive a guaranteed salary of $880 per week. [¶] The last three elements were overwhelmingly established through [Employer's] witnesses . . . who proved that [Arechiga] was shown on a piece of paper, in January 2000, that his salary was based upon an hourly rate of $11.14, that [Arechiga] was told that his guaranteed salary covered both his regular and overtime hours, and that this agreement was reached before the work in dispute was performed."

Arechiga contends insufficient evidence existed to prove he had entered into an explicit mutual wage agreement with Employer. In pressing his contention, Arechiga ignores a fundamental rule of appellate practice obligating him to completely and fairly summarize the evidence supporting the court's findings and judgment. (*Brockey v. Moore* (2003) 107 Cal.App.4th 86, 96–97 [131 Cal.Rptr.2d 746]; see also *Jhaveri v. Teitelbaum* (2009) 176 Cal.App.4th 740, 748–749 [98 Cal.Rptr.3d 268].) For example, he asserts no evidence existed that he, as a Spanish speaker with a purportedly poor grasp

of English, understood the contents of a slip of paper on which his supervisor had written his hourly wage. His assertion ignores, however, evidence that he spoke English well and, in any event, the written numerals stating his hourly rate did not require translation from Spanish to English. He also asserts that he did not explicitly agree to an hourly wage of $11.14. In fact, however, Employer's witnesses testified that Arechiga's hiring supervisor told him his hourly rate was $11.14 per hour. Arechiga's coworker testified for Employer: "Q. Did [supervisor] Simms also discuss the terms of Carlos [Arechiga's] employment? [¶] A. Yes. [¶] Q. Did Mr. Simms tell you—did Mr. Simms tell Carlos how much he was going to be paid? [¶] A. Yes. [¶] Q. What did he tell Carlos he was going to be paid? [¶] A. They were going to pay him 11.14 per hour." Another supervisor testified that Arechiga's hourly wage made Arechiga "jubilant" because it more than doubled the wage he earned from his previous employer. The supervisor testified: "[H]e said he was only getting $5.00 an hour and [with Employer] he's making twice the amount. He was just ecstatic about it. And so he was just so happy. So jubilant about it." Arechiga's failure to discuss evidence supporting the court's findings and judgment excuses us from any need to address his contention of insufficient evidence, and we therefore deem the contention abandoned. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362]; *Ajaxo Inc. v. E\*Trade Group, Inc.* (2005) 135 Cal.App.4th 21, 50 [37 Cal.Rptr.3d 221]; *Brockey*, at p. 97.) In any event, the evidence we have recited was legally sufficient to support the judgment.

### 2. *Labor Code Section 515 Does Not Outlaw Explicit Mutual Wage Agreements*

Arechiga observes that overtime laws advance important public policies that employers and employees cannot waive.[3] Although parties may not waive overtime protections, the law permits an employer and employee to enter into an explicit mutual wage agreement. Under such an agreement, an employer and employee may lawfully agree before the employee starts work to pay the employee a guaranteed salary so long as the employee receives at least one and one-half times his basic rate for any hours worked beyond the statutorily defined workday of eight hours. (*Espinoza v. Classic Pizza, Inc., supra*, 114 Cal.App.4th at p. 974; *Ghory v. Al-Lahham, supra*, 209 Cal.App.3d at p. 1491; accord, *Hernandez v. Mendoza* (1988) 199 Cal.App.3d 721, 725 [245 Cal.Rptr. 36] ["Absent an explicit, mutual wage agreement, a fixed salary does not serve to compensate an employee for the number of hours worked under statutory overtime requirements." (italics omitted)]; *Alcala v. Western Ag Enterprises* (1986) 182 Cal.App.3d 546, 550–551 [227 Cal.Rptr.

---

[3] Arechiga's observation is a red herring because Employer does not deny its obligation to pay him overtime; their dispute is the hourly rate that Employer owed Arechiga for the overtime he worked.

453] ["explicit agreement" for a fixed salary can comply with overtime laws]; *Brennan v. Elmer's Disposal Service, Inc.* (9th Cir. 1975) 510 F.2d 84, 86, fn. 1.)

Arechiga contends Labor Code section 515 outlawed explicit mutual wage agreements for nonexempt employees such as himself. Enacted in 2000, section 515 permits labor regulators to exempt executive, administrative, and professional employees from ordinary overtime benefits. (Lab. Code, § 515, subd. (a).) Subdivision (d) of that statute states: "For the purpose of computing the overtime rate of compensation required to be paid to a nonexempt full-time salaried employee, the employee's regular hourly rate shall be 1/40th of the employee's weekly salary."

Arechiga contends subdivision (d) required the trial court to divide his weekly pay of $880 by 40 hours without regard to the overtime he worked to derive what he asserts was, under Labor Code section 515's application, his base pay of $22 per hour.[4] Thus, according to Arechiga, the court erred in rejecting his claim against Employer for recovery of additional overtime pay of $33 per hour ($22 x 1.5) for each of the 26 hours in weekly overtime that he worked during three years of 66 hour work weeks.

Arechiga cites no case law supporting his assertion that Labor Code section 515, subdivision (d) abolished explicit mutual wage agreements.[5] Arechiga correctly notes that decisions by California state appellate courts approving explicit mutual wage agreements involved overtime wage claims predating section 515's enactment in 2000. (See *Espinoza v. Classic Pizza, Inc., supra,* 114 Cal.App.4th at p. 972 [employment ended in 1999]; *Ghory v. Al-Lahham, supra,* 209 Cal.App.3d 1487; *Hernandez v. Mendoza, supra,* 199 Cal.App.3d

---

[4] Appellant contends Industrial Welfare Commission wage order No. 5-2001(3)(A)(1)(c), which incorporated the language of Labor Code section 515, stands to the same effect.

[5] Appellant's reliance on the Enforcement Policies and Interpretations Manual of the Division of Labor Standards Enforcement (DLSE) is unavailing because regulators did not properly adopt it, making it nonbinding on courts. As our Supreme Court stated earlier this year in *Martinez v. Combs* (2010) 49 Cal.4th 35, 50, fn. 15 [109 Cal.Rptr.3d 514, 231 P.3d 259]: "[W]e give the DLSE's current enforcement policies [as stated in the DLSE enforcement manual] no deference because they were not adopted in compliance with the Administrative Procedure Act." Accordingly we give no deference to the following passage from the manual, which Arechiga quotes: "Salaried Non-Exempt—Explicit Written Agreement No Longer Allowed. In the past, California law has been construed to allow the employer and the employee to enter into an explicit mutual wage agreement which, if it met certain conditions, would permit an employer to pay a salary to a non-exempt employee that provided compensation for hours in excess of 40 in a workweek. (See, *Ghory v. Al-Lahham*[, *supra*,] 209 Cal.App.3d 1487 [citation]). Such an agreement (backing in the regular rate) is no longer allowed as a result of the specific language adopted by the Legislature at Labor Code § 515(d). To determine the regular hour rate of pay for a non-exempt salaried employee, one must divide the weekly salary paid by no more than forty hours."

721; *Alcala v. Western Ag Enterprises, supra,* 182 Cal.App.3d 546.) But the fact that the decisions predate 2000 does not mean they are no longer good law, and no published decision has said otherwise. To the contrary, the Judicial Council's current jury instruction, CACI No. 2703, cites *Hernandez v. Mendoza* for its acknowledgment of explicit mutual wage agreements. (See Judicial Council of Cal., Civ. Jury Instns. (2010) Sources and Authority for CACI No. 2703, pp. 41–42.) Additionally, federal district courts in California have acknowledged the continued viability of the explicit mutual wage agreement doctrine. (See *McCullough v. Lennar Corp.* (S.D.Cal. Nov. 10, 2009, No. 09cv1808-WQH-NLS) 2009 WL 3805305, pp. *1, *6 [applying Cal. law under diversity jurisdiction, noted fixed salary under "an explicit wage agreement" can satisfy overtime laws]; *Bates v. Old Time Coffee Co., Inc.* (N.D.Cal. Jan. 13, 2000, No. C 99-1129 SC) 2000 WL 41223, p. *3 [citing *Ghory v. Al-Lahham* for proposition that "Absent an explicit, fixed wage agreement, a fixed salary does not serve to compensate an employee for overtime work."].) Accordingly, we conclude explicit mutual wage agreements remain valid in California, and therefore the trial court properly upheld the agreement formed here.

3. *Admission of Parol Evidence of Prior Oral Agreement*

Arechiga notes that his written employment agreement with Employer circled the word "salary," not "wage," in setting his pay at $880. Additionally, the agreement contained an integration clause stating: "This Agreement embodies the complete and entire agreement and understanding between the Parties to the Agreement with respect to the subject matter of this Agreement and supersedes all prior negotiations, agreements, and understandings relating to the subject matter of this Agreement." Arechiga contends the meaning of the circled term "salary," when joined to Labor Code section 515, is unambiguous. (*Bodle v. Bodle* (1978) 76 Cal.App.3d 758, 764 [143 Cal.Rptr. 115] ["Applicable law becomes part of the contract as fully as if incorporated by reference."].) According to him, the contract unambiguously directed that his hourly base pay was $22, derived by dividing the 40 hours of a standard work week into his salary of $880. Arechiga asserts the evidence Employer submitted to prove the existence of an explicit mutual wage agreement tried to change the meaning of the term "salary" from pay for 40 hours' work to pay for 66 hours. Because the written contract contained an integration clause, Arechiga contends the court erred in admitting Employer's parol evidence of the term's meaning. We disagree.

Parol evidence may not vary or contradict the terms of an integrated contract. (Code Civ. Proc., § 1856 ["(a) Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any

prior agreement or of a contemporaneous oral agreement."].) As the court in *Singh v. Southland Stone, U.S.A., Inc.* (2010) 186 Cal.App.4th 338 [112 Cal.Rptr.3d 455], recently explained: "[The parol evidence rule] provides that the terms of a writing intended by the parties as a final expression of their agreement cannot be contradicted by evidence of either a prior agreement or a contemporaneous oral agreement. [Citations.] Further, if the parties intended the writing to be a complete and exclusive statement of the terms of the agreement, its terms cannot be explained or supplemented by evidence of consistent additional terms. [Citation.]" (*Singh*, at p. 352.) A court may admit parol evidence, however, to interpret an ambiguous contract. (Code Civ. Proc., § 1856, subd. (g) [rule against parol evidence "does not exclude other evidence . . . to explain an extrinsic ambiguity or otherwise interpret the terms of the agreement . . . ."].) Our Supreme Court explained in *Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336 [9 Cal.Rptr.3d 97, 83 P.3d 497], "The parol evidence rule . . . 'generally prohibits the introduction of any extrinsic evidence, whether oral or written, to vary, alter or add to the terms of an integrated written instrument.' [Citation.] The rule does not, however, prohibit the introduction of extrinsic evidence 'to explain the meaning of a written contract . . . [if] the meaning urged is one to which the written contract terms are reasonably susceptible.' [Citation.]" (*Casa Herrera, Inc.*, at p. 343; see *Singh*, at p. 352.)

The test for ambiguity is whether the contractual term is reasonably susceptible to more than one meaning. (*Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 37 [69 Cal.Rptr. 561, 442 P.2d 641].) "The test of whether parol evidence is admissible to construe an ambiguity is not whether the language appears to the court to be unambiguous, but whether the evidence presented is relevant to prove a meaning to which the language is 'reasonably susceptible.' [Citation.] [¶] The decision whether to admit parol evidence involves a two-step process. First, the court provisionally receives (without actually admitting) all credible evidence concerning the parties' intentions to determine 'ambiguity,' i.e., whether the language is 'reasonably susceptible' to the interpretation urged by a party. If in light of the extrinsic evidence the court decides the language is 'reasonably susceptible' to the interpretation urged, the extrinsic evidence is then admitted to aid in the second step—interpreting the contract. [Citation.]" (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165 [6 Cal.Rptr.2d 554].)

The employment agreement's use of the word "salary" was ambiguous because the contract did not identify the number of work hours for which

Arechiga earned his compensation. Arechiga contends the $880 salary covered only the 40 hours of his work week that did not spill into overtime.[6] Employer asserts, on the other hand, that $880 was Arechiga's entire weekly compensation, calculated as 40 hours of straight time a week at $11.14 per hour plus 26 hours of overtime at $16.71 ($11.14 x 1.5) per hour. Because the employment agreement did not identify the time period to which the $880 applied, which thus rendered "salary" susceptible to more than one meaning, the court did not err in admitting parol evidence to interpret the agreement.

### 4.   *Hearsay Testimony Concerning Deceased Supervisor Simms*

■    The court overruled Arechiga's hearsay objections to testimony by Arechiga's coworker, Luciano Garcia, that then supervisor Simms offered Arechiga and Garcia an hourly wage of $11.14 when he hired both of them. According to Garcia, Simms wrote the offered hourly wage on a slip of paper and showed it to Arechiga, an offer Arechiga accepted. Arechiga contends the testimony is "hearsay evidence regarding what a deceased person [Simms] allegedly discussed with [appellant] years before the parties signed a fully integrated written Employment Agreement to alter the terms of the written Agreement." Arechiga does not develop his contention with argument supported by citation to legal authority. Arechiga's failure to develop any argument is especially problematic here because the offer and acceptance between Simms and Arechiga on the terms of Arechiga's employment as witnessed by Garcia are arguably operative facts creating a contract. Operative facts draw their significance from having been said or written regardless of whether they are true, and such facts lie outside the hearsay rule.[7] "A well-established exception or departure from the hearsay rule applies to cases in which the very fact in controversy is whether certain things were said and not whether these things were true or false, and in these cases the words are admissible not as hearsay, but as original evidence. [Citation.] Thus, written or oral utterances, which are acts in themselves constituting legal results in issue in the case, do not come under the hearsay rule. [Citation.]" (*Zuckerman v. Pacific Savings Bank* (1986) 187 Cal.App.3d 1394, 1404, fn. 2

---

[6] We note the record does not show Arechiga ever complained during the more than six years he worked for Employer that his pay did not compensate him for overtime. His seeming failure to have complained that Employer was not paying him the right amount of overtime pay undercuts his position here. (See *Kennecott Corp. v. Union Oil Co.* (1987) 196 Cal.App.3d 1179, 1189 [242 Cal.Rptr. 403] ["The conduct of the parties after execution of the contract and before any controversy has arisen as to its effect affords the most reliable evidence of the parties' intentions."]; *Salton Bay Marina, Inc. v. Imperial Irrigation Dist.* (1985) 172 Cal.App.3d 914, 936 [218 Cal.Rptr. 839].)

[7] Arechiga also objected to trial testimony by Simms's supervisor, Dean Hopkins, that Simms told Hopkins that Simms had hired Arechiga at $11.14 an hour. Although Hopkins's testimony about a conversation between Simms and Arechiga that Hopkins did not hear was hearsay, the court's error, if any, in admitting Hopkins's testimony was harmless given the weight of other evidence establishing Arechiga's hourly rate.

[232 Cal.Rptr. 458], overruled by statute on other grounds as stated in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 530 [113 Cal.Rptr.3d 327, 235 P.3d 988]; *Jazayeri v. Mao* (2009) 174 Cal.App.4th 301, 316 [94 Cal.Rptr.3d 198] ["documents containing operative facts, such as the words forming an agreement, are not hearsay."].) For Arechiga's failure to argue the point, we deem his contention abandoned. (*Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699–700 [46 Cal.Rptr.2d 119].)

### 5. Expert Testimony About Wages in Janitorial Industry

The court admitted the testimony of Employer's expert economist who submitted evidence of median wages for janitors in several different labor markets. The evidence showed the median wage for janitors in Los Angeles was $7.90, about one-third the rate Arechiga claimed under his interpretation of his employment agreement. The court allowed the evidence because the court deemed it relevant to commercial reasonableness, which assisted the court in interpreting the contract under industry custom and usage. (Code Civ. Proc., § 1856, subd. (c) [exception under parol evidence rule for "course of dealing or usage of trade or by course of performance."].)

Arechiga contends the court abused its discretion in admitting evidence of wage standards because those standards were irrelevant. According to Arechiga, the employment agreement, governed by Labor Code section 515, as a matter of law set his hourly base pay at $22 per hour. Arechiga's contention fails, however, because he misapplies Labor Code section 515. Section 515 does not, as we have explained above, prohibit explicit mutual wage agreements of the sort the court found existed here. A set hourly wage being part of such an agreement (*Espinoza v. Classic Pizza, Inc., supra,* 114 Cal.App.4th at p. 974; *Ghory v. Al-Lahham, supra,* 209 Cal.App.3d at p. 1491), it follows that section 515 likewise does not bar evidence relevant to establishing that wage.

Arechiga also contends the court erred in admitting industry wage evidence because it went to Employer's purported affirmative defense of unjust enrichment against Arechiga's claim for recovery of additional overtime compensation. According to Arechiga, Employer did not plead unjust enrichment in his answer to Arechiga's complaint, and thus waived the defense. The court did not, however, admit the wage evidence for the purposes of Employer's purported affirmative defense of unjust enrichment. Hence, Arechiga's contention fails because it misses the mark.

### 6. Attorney's Fees and Costs Contentions Abandoned

After the bench trial, Employer moved for more than $400,000 in attorney's fees and costs. The trial court denied Employer its attorney's fees, but

Arechiga confesses he was unaware of the denial when he filed his opening brief on appeal. Accordingly, his opening brief contended the trial court erred in awarding attorney's fees, a contention Arechiga now abandons. Likewise abandoned by Arechiga for his failure to address in his opening brief, although he appealed from the ruling, is Employer's recovery of *costs*, which the trial court did award. (*Landry v. Berryessa Union School Dist., supra,* 39 Cal.App.4th at pp. 699–700.)

## DISPOSITION

The judgment is affirmed. Respondent to recover its costs on appeal.

Bigelow, P. J., and Grimes, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 27, 2011, S190802.