Filed 12/15/15  Shtofman v. Kyle CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| ROBERT SCOTT SHTOFMAN, | B250087 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC462283) |
| v. | |
| DAVID KYLE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Frederick Carl Shaller, Judge.  Affirmed.

Lewis Brisbois Bisgaard & Smith, Roy G. Weatherup, Bartley L. Becker and Caroline E. Chan for Defendant and Appellant.

Robert Scott Shtofman, in pro. per.; and Law Office of Robert Scott Shtofman for Plaintiff and Respondent.

_____

This case involves two attorneys, defendant and appellant David Kyle (Kyle) and plaintiff and respondent Robert Scott Shtofman (Shtofman), who had joint venture agreements to share attorney fees. After Kyle failed to pay Shtofman certain fees, Shtofman sued him alleging several causes of action, including breach of contract and fraud. A jury found in favor of Shtofman and imposed punitive damages against Kyle. Kyle now appeals. He contends that certain retainer agreements he and Shtofman had with their clients are unenforceable under Rule 2-200 of the California State Bar Rules of Professional Conduct (rule 2-200) and that there is insufficient evidence to support the jury's verdicts. We affirm on substantive and procedural grounds.

**FACTUAL AND PROCEDURAL BACKGROUND**

**The Agreements**

Between 2002 and 2009, Kyle and Shtofman entered into a series of oral joint venture agreements, in which they agreed to work together on various groups of legal cases and to share equally attorney fees and costs. In 2007 and 2008, they entered into attorney-client retainer agreements with four different clients (the retainer agreements) in what the parties call the Lutheran clergy sexual abuse cases (the clergy abuse cases). The retainer agreements were drafted and signed only by Kyle, but name both Kyle and Shtofman as "attorney," and provide that "attorney" would receive 40 percent of any recovery.

In January 2009, Kyle and Shtofman entered into an agreement with attorney Paul Kiesel (Kiesel) regarding the clergy abuse cases. Shtofman testified that the terms of the agreement were that he and Kyle would receive 50 percent of attorney fees from the clergy abuse cases.

At a lunch meeting at Philippe's Restaurant on January 11, 2011, Shtofman asked Kyle about the status of the clergy abuse cases. Kyle responded that it was "none of [Shtofman's] business." In fact, Kyle knew that the cases had settled, and he admitted at trial that he did not tell Shtofman about the settlement. The next day, Shtofman checked the Web site for the Los Angeles Superior Court and learned that the cases had settled and been dismissed on November 30, 2010. When Shtofman called Kyle about the

2

settlement, Kyle again said it was none of Shtofman's business. After being pressed, Kyle disclosed that the cases had settled for $1.8 million.

**The Check**

On March 24, 2011, Kiesel issued a check payable to "Law Offices of David Kyle and Robert Shtofman Client Trust Fund" in the amount of $222,800. Kyle had previously told Kiesel not to put Shtofman's name on the check.

On March 29, 2011, Kyle and Shtofman went to a Bank of America branch to deposit the check. They told the banker they needed an account that required both of their signatures to make a deposit or withdrawal. The teller filled out forms, including a "Sole Proprietorship Authorization—Opening and Maintaining Deposit Accounts and Services," on which Shtofman handwrote twice that two signatures were needed for all deposits and withdrawals. He and Kyle added their initials to one of the interlineations.

On April 4, 2011, Kyle and Shtofman returned to the bank and received a copy of the deposit receipt showing the check had been deposited. The bank manager testified that later that same day, Kyle returned alone to the bank and she gave him the check because "he wanted it back."

On April 7, 2011, Kyle and Shtofman executed "The Limited Liability Partnership Agreement of DKRS, LLP," which indicated that the parties disputed ownership of the check and that monies from the check could not be maintained in either of their individual names. They took this agreement to the bank. Nevertheless, on April 12, 2011, Kyle deposited the check into his own Bank of America account. Kyle admitted at trial that he did not tell Shtofman about doing so. On May 10, 2011, Kyle left a voicemail for Shtofman telling him "The money is safe. Don't worry about it." This message was played for the jury. By July 2011, there was no money left in the account.

**The Trial Court Proceedings**

Shtofman filed a second amended complaint (SAC) against Kyle, alleging causes of action for conversion, breach of fiduciary duty, fraud, breach of contract, and quantum meruit.[1]  Kyle filed an answer to the SAC.

The case proceeded to a three-week jury trial.  The jury returned special verdicts in favor of Shtofman, awarding him the following damages:  $111,400 on his breach of contract claim; $180,000 on his fraud claim; $111,400 on his quantum meruit claim; $111,400 plus future economic damages of $6,000 on his breach of fiduciary duty claim; $111,400 plus noneconomic damages of $6,000 on his conversion claim, and $14,300 in punitive damages.

Kyle filed motions for a new trial and for judgment notwithstanding the verdict, which the trial court denied in an 18-page written ruling.  Kyle filed this appeal.

**DISCUSSION**

**I.  Kyle is Equitably Estopped from Challenging Fee-Splitting Agreements**

Kyle begins his legal argument by stating:  "It [is] undisputed that Mr. Shtofman failed to present any evidence that any retainer agreements provided full written disclosure of the division of fees and of the terms of the division.  He cannot enforce a fee splitting agreement with Mr. Kyle."

Kyle relies on rule 2-200, which provides:  "(A) A member shall not divide a fee for legal services with a lawyer who is not a partner of, associate of, or shareholder with the member unless:  [¶]  (1) The client has consented in writing thereto after a full disclosure has been made in writing that a division of fees will be made and the terms of such division; and  [¶]  (2) The total fee charged by all lawyers is not increased solely by reason of the provision for division of fees and is not unconscionable as that term is defined in rule 4-200."

Kyle argues the retainer agreements do not comply with rule 2-200 because they fail to disclose in writing how the attorney fees will be divided between him and

---

[1]     Shtofman also sued Bank of America, N.A., which is not a party to this appeal. Shtofman's coplaintiff, Richard M. Chaskin, is also not a party on appeal.

Shtofman, and thus are unenforceable. Because the retainer agreements are unenforceable, he continues, Shtofman is not entitled to any attorney fees under the parties' joint venture agreements to split fees. We agree with Shtofman that Kyle is equitably estopped from raising this issue.

First, Kyle himself drafted the retainer agreements he now claims are unenforceable and pursuant to which he tried to keep the entirety of attorney fees to be split with Shtofman. "[T]he offending attorney is equitably estopped from wielding rule 2-200 as a sword to obtain unjust enrichment." (*Barnes, Crosby, Fitzgerald & Zeman, LLP v. Ringler* (2012) 212 Cal.App.4th 172, 186.)

Second, Kyle raised this defense for the first time in his posttrial motions. While he asserts in his opening brief that the issue is "a straightforward question of law," he is wrong. Had Kyle timely raised the issue before or during trial, Shtofman would have been able to present more developed evidence of the circumstances surrounding the retainer agreements. For example, why did only Kyle sign the retainer agreements? What did Kyle tell Shtofman about the retainer agreements? Did Shtofman even know what the retainer agreements said? Did Shtofman ever see or ask to see the retainer agreements before the clients signed them? If not, why not?

Third, along the same vein, the evidence is unclear regarding the agreement between Kiesel, Kyle and Shtofman as to attorney fees. Kyle suggests this agreement is irrelevant, but it was pursuant to this agreement that the amount of attorney fees was calculated and paid. As the trial court noted in its 18-page ruling denying Kyle's posttrial motions, Kiesel never testified, and the evidence was unclear "as to whether Kiesel paid the money for services rendered pursuant to a fee split agreement, joint venture agreement, quantum meruit, or another basis or agreement. There is no evidence as to whether Kiesel obtained or failed to obtain authorization from his clients as to the payment to Shtofman and Kyle. The court lacks sufficient evidence from which the court could deduce that whatever agreement existed as between Kiesel on one hand and Shtofman and Kyle on the other complied or did not comply with Rule 2-200."

Accordingly, under the circumstances here, Kyle is equitably estopped from raising the issue that the retainer agreements are unenforceable under rule 2-200.

## II. Kyle Has Forfeited His Substantial Evidence Challenge

Kyle next argues that the evidence is insufficient to support the jury's verdicts in favor of Shtofman on his causes of action for quantum meruit, breach of contract, fraud, breach of fiduciary duty and conversion.

Kyle does not set forth our standard of review, which is: "'When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court begins and *ends* with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact.'" (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.) "If this 'substantial' evidence is present, no matter how slight it may appear in comparison with the contradictory evidence, the judgment must be upheld. As a general rule, therefore, we will look only at the evidence and reasonable inferences supporting the successful party, and disregard the contrary showing." (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631.)

When an appellant challenges the sufficiency of the evidence, the opening brief must set forth "all the material evidence on the point" and not merely state facts favorable to the appellant. (*Stewart v. Union Carbide Corp*. (2010) 190 Cal.App.4th 23, 34.) An appellant fails to meet this requirement when it "cites the evidence in its favor, points out the ways in which (it contends) it controverted or impeached [the other party's] evidence, and interprets the evidence in the light most favorable to itself." (*Id*. at p. 34.) An appellant must present a "fair summary" of all the evidence and "'cannot shift this burden onto respondent,'" nor can it require the reviewing court to "'undertake an independent examination of the record.'" (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 409–410.) When an appellant fails to set forth all of the material evidence, the claim of insufficient evidence is waived or forfeited. (*Mendoza v. City of West Covina* (2012) 206 Cal.App.4th 702, 713–714; *Arechiga v. Dolores Press, Inc*. (2011) 192 Cal.App.4th 567, 571–572; *Clark v. Superior Court* (2011) 196 Cal.App.4th 37, 52–53.)

6

We find that Kyle has forfeited his substantial evidence challenge because he did not present a fair summary of all of the material evidence. The statement of facts we set forth above is largely taken from Shtofman's respondent's brief and our own review of the record, rather than from Kyle's opening brief. While Kyle does cite to some evidence favorable to Shtofman, his opening brief largely presents an incomplete, one-sided, and confusing statement of the evidence. Kyle inexplicably spends more than seven pages of his factual background citing to the allegations of the SAC. In his discussion of the trial, Kyle cites only to his and Shtofman's testimony, and presents the testimony most favorable to himself. Kyle's opening brief omits key pieces of evidence, including testimony from the bank manager, the voicemail he left for Shtofman stating the money was safe, the meeting at Philippe's Restaurant in which he failed to disclose the settlement of the clergy abuse cases, and that he told Kiesel not to put Shtofman's name on the check. Kyle's factual background essentially supports his theory of the case—that Shtofman failed to perform legal work as required by the parties' joint venture agreements.

We find that Kyle also forfeited his substantial evidence challenge because in his legal discussion of why each cause of action is not supported by substantial evidence, his assertions are merely conclusory,[2] he does not cite to the record, and he repeatedly states that Shtofman did not present substantial evidence of the causes of action, thereby improperly shifting his appellate burden to Shtofman and ignoring the evidence Shtofman did present. It is well established that an appellant bears an affirmative burden of demonstrating error in the trial court. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Kyle has failed to do so.

---

[2] For example: "Mr. Shtofman's work cannot be worth the amount awarded by the jury"; "Apparently the jury did not find there was substantial evidence to support any other basis for the breach of contract claim"; "Mr. Shtofman's fraud claim [is] based upon Mr. Kiesel's representation as to the terms of the division of fees between his firm and the others, not Mr. Kyle's representation"; "Mr. Kyle breached no fiduciary duties owed to Mr. Shtofman"; "Regardless of Mr. Kyle's actions, he did not cause Mr. Shtofman to incur any damages for conversion."

## DISPOSITION

The judgment is affirmed.  Shtofman is entitled to his costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
　　　　　　　ASHMANN-GERST


We concur:


_____, P. J.
　　　　　BOREN


_____, J.
　　　　　HOFFSTADT